Nicholls vs. The State.

NICHOLLS, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 1 — March 22, 1887.*

CRIMINAL LAW AND PRACTICE. *(1) Pleading: Burglary in day time. (2, 3) Constructive breaking. (4) Express car: "Railroad freight car." (5) Proof of ownership. (6) Failure of accused to be sworn: Comment by prosecutor: Presumption.*

1. An information charging the breaking and entering of a freight car, but not stating whether it was in the day time or night time, is *held* sufficient under sec. 4410, R. S., as charging a breaking and entering in the day time.

2. Defendant secreted himself in a box which he procured to be placed by the agents of an express company in an express car. His intention was to rob the car. *Held,* that this was a constructive breaking.

3. Sec. 4411, R. S., does not supersede the common-law doctrine of constructive breaking, but merely enlarges its scope in some respects.

4. An information charging the breaking and entering of a "freight and express car of the American Express Company," sufficiently charges the offense to have been committed in a "railroad freight car," within the meaning of sec. 4410, R. S.

5. Under such an information, proof of the exclusive possession, occupancy and control of the car by the express company, is sufficient proof of ownership.

6. In the argument of a criminal case the district attorney animadverted to the jury upon the fact that the prisoner had not been sworn. Objection was made, and the trial court ruled: "It is probably competent to show that the offense has not been denied." The undisputed evidence included the prisoner's voluntary admissions of guilt. The record does not show the language used by the district attorney, or the occasion for it. *Held,* that it must be presumed that something occurred or was said which rendered the remark proper.

ERROR to the Circuit Court for *Jackson* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The plaintiff in error was tried and convicted of the offense charged in the second count of the information, to the

effect that July 25, 1885, at the county of Jackson, in said state, the said *Nicholls,* the freight and express car of the American Express Company there situate, then and there unlawfully, feloniously, and burglariously did break and enter, with intent then and there the goods, chattels, and property of the said American Express Company, then and there in the said freight and express car being found, then and there feloniously and burglariously to steal, take, and carry away, against the peace and dignity of the state of Wisconsin. Upon the verdict of guilty being returned, the prisoner moved the court in arrest of judgment thereon, .for the reason that the information did not charge the prisoner with any criminal offense known to the law in this state; which motion was denied, and the prisoner excepted. Judgment was thereupon rendered, and sentence imposed upon the prisoner to the effect that he be confined at hard labor in the state prison for the term of three years. To reverse that judgment the prisoner sued out this writ of error.

*H. W. Barney* and *John Turner,* for the plaintiff in error, to the point that the trial court erred in ruling that it was competent for the district attorney to animadvert upon the fact that the accused was not sworn in his own behalf, and in intensifying that ruling by saying: " It is probably competent to show that the offense has not been denied," cited sec. 4071, R. S.; *Comm. v. Nichols,* 114 Mass. 285; *Comm. v. Harlow,* 110 id. 411; *Comm. v. Scott,* 123 id. 239; *Crandall v. People,* 2 Lans. 309; *Ruloff v. People,* 45 N. Y. 213; *People v. Tyler,* 36 Cal. 522; *Calkins v. State,* 18 Ohio St. 366; *Long v. State,* 56 Ind. 182. The accused pleaded not guilty, and yet, because he was not sworn, the court tells the jury that he has not denied the offense.

The *Attorney General,* for the defendant in error, argued, among other things, that the proof as to the ownership of the car was sufficient. *State v. Parker,* 16 Nev. 79; *Huling*

*v. State*, 17 Ohio St. 589; *Markham v. State*, 25 Ga. 52; *Houston v. State*, 38 id. 165; 2 Bish. Crim. Proc. sec. 1377. It was not necessary to allege that the offense was committed in the day time. *Comm. v. Reynolds*, 122 Mass. 456; *Butler v. People*, 4 Denio, 68; Bish. Crim. Proc. sec. 133. Where there are two grades of an offense, the greater having certain peculiar ingredients, the lesser negativing these peculiar features, the information need not aver the negative facts. *State v. Kane*, 63 Wis. 264.

CASSODAY, J. There is undisputed testimony on the part of the state to the effect that Saturday, July 25, 1885, the plaintiff in error was stopping at a hotel in Black River Falls, having his name registered as W. H. Eldredge, and a room assigned him opposite thereto. He had then been there about three days. In the afternoon of the day named he had a box or chest taken from the depot to his room, weighing about 150 pounds. No evidence was given as to what was in it. About three o'clock in the afternoon of the same day he arranged with the local express agent for the sending of a box to Chicago, then at the hotel, and represented by him as weighing about 225 pounds. By his prearrangement, the box was brought to the depot just in time for the 7:50 P. M. Chicago train, and was shipped in the express car thereon by the local agent, as directed. Soon after the starting of the train, there seems to have been a suspicion as to the contents of the box. This suspicion was increased as telegrams were received at different stations from Black River Falls respecting the box. Finally, being convinced by such dispatches that there was a man in the box, the train-men telegraphed forward to Elroy to secure the presence of an officer on the approach of the train to make the arrest. On reaching Elroy, in the night, this box in the express car was opened, and the plaintiff in error was found therein, with a revolver, billy, razor, knife, rope, gimlet, and

a bottel of chloroform. There was also evidence tending to show that there were packages of money in the custody of the express agent on the car; that such agent had an assistant as far as Elroy; that from there to Chicago such car was usually in charge of only one man; that after the arrest, and when asked his object in being thus shipped in the box, the prisoner voluntarily admitted, in effect, that he had considered his chances carefully; that he went into the thing as a matter of speculation; that he needed money, and needed it quickly; that he expected to get fully $50,000; that had he passed out of Elroy he would have got off with the money; that, in a case of that kind, if a human life stood in his way, it did not amount to a snap of the finger.

The motion in arrest of judgment was based upon the dissimilarity in the language employed in the second count in the information, under which the plaintiff in error was convicted, and the statute under which he was prosecuted.

1. That statute provides, in effect, that "any person who shall *enter in the night time without breaking*, or shall *break and* enter in the day time any . . . railroad freight car, or passenger car, with intent to commit the crime of murder, rape, robbery, larceny, or other felony, shall be punished by imprisonment in the state prison not more than three years, nor less than one," etc. Sec. 4410, R. S. Under this statute, such entry with such intent in the *night time*, even without breaking, is sufficient to constitute such offense. *Rolland v. Comm.* 82 Pa. St. 325. But the allegation is that he "did break and enter with intent," etc. Had the allegation been that he " did *break and* enter in the night time," with such intent, then the case would have come under the preceding section. That would have been for an offense of a higher grade, and could only have been committed in the night time. Manifestly there was no intention of the pleader to prosecute under that section. His evident purpose was to charge the offense prescribed in the

section quoted. That could be done by charging that it was committed in the night time without breaking. But if it occurred in the day time, then it was necessary to charge a breaking in order to bring the case within the section. If it occurred at all it necessarily occurred either in the night time or in the day time. To charge that the offense was committed in the day time would only have been another way of charging negatively that it was not committed in the night time, so as to prevent its coming under the preceding section, which prescribed the higher offense. But such negative allegation would have been unnecessary. *State v. Kane*, 63 Wis. 260. Since the count in question charges the breaking as well as the entry, and fails to charge that it was in the night time, it does, in effect, charge that he did break and enter in the day time. *Comm. v. Reynolds*, 122 Mass. 454; *Butler v. People*, 4 Denio, 68. "For this purpose," said Blackstone, "anciently the day was accounted to begin only at sunrising, and to end immediately upon sunset; but the better opinion seems to be that if there be daylight or *crepusculum* enough begun or left to discern a man's face withal, it is no burglary. But this does not extend to moonlight." 4 Bl. Comm. 224. Under this definition, we must conclude from the proof that the entry was in the day time.

2. The question recurs whether the proofs show that there was a breaking in fact, within the meaning of the statute. Certainly not in the sense of picking a lock, or opening it with a key, or lifting a latch, or severing or mutilating the door, or doing violence to any portion of the car. On the contrary, the box was placed in the express car with the knowledge, and even by the assistance, of those in charge of the car. But it was not a passenger car, and the plaintiff in error was in no sense a passenger. The railroad company was a common carrier of passengers as well as freight. But the express company was exclusively a common carrier

of freight, that is to say, goods, wares and merchandise. As such carrier, it may have at times transported animals, birds, etc., but it may be safely assumed that it never knowingly undertook to transport men in packages or boxes for special delivery. True, the plaintiff in error contracted with the local express agent for the carriage and delivery of such box, but neither he nor any one connected with the express car or the train had any knowledge or expectation of a man being concealed within it. On the contrary, they each and all had the right to assume that the box contained nothing but inanimate substance,— goods, wares, or merchandise of some description. The plaintiff in error knew that he had no right to enter the express car at all without the consent of those in charge. (The evidence was sufficient to justify the conclusion that he unlawfully gained an entrance without the knowledge or consent of those in charge of the car, by false pretenses, fraud, gross imposition, and circumvention, with intent to commit the crime of robbery or larceny, and, in doing so, if necessary, the crime of murder. This would seem to have been sufficient to constitute a constructive breaking at common law, as defined by Blackstone, thus: " To come down a chimney is held a burglarious entry; for that is as much closed as the nature of things will permit. So, also, to knock at the door, and, upon opening it, to rush in with a felonious intent; or, under pretense of taking lodgings, to fall upon the landlord and rob him; or to procure a constable to gain admittance in order to search for traitors, and then to bind the constable and rob the house. All these entries have been adjudged burglarious, though there was no actual breaking, for the law will not suffer itself to be trifled with by such evasions, especially under the cloak of legal process. And so, if a servant opens and enters his master's chamber door with a felonious design; or if any other person, lodging in the same house or in a public inn, opens and enters another's

door with such evil intent, it is burglary. Nay, if the serv-ant conspires with a robber and lets him into the house by night, this is burglary in both; for the servant is doing an unlawful act, and the opportunity afforded him of doing it with greater ease rather aggravates than extenuates the guilt." 4 Bl. Comm. 226, 227.

So it has frequently been held in this country that, " to obtain admission to a dwelling-house at night, with the in-tent to commit a felony, by means of artifice or fraud or upon a pretense of business or social intercourse, is a con-structive breaking, and will sustain an indictment charging a burglary by breaking and entering." *Johnston v. Comm.* 85 Pa. St. 54, and 82 Pa. St. 306; *State v. Wilson*, 1 N. J. Law, 439, 1 Am. Dec. 216; *State v. McCall*, 4 Ala. 643, 39 Am. Dec. 314; Bish. Stat. Crimes, § 312, and cases there cited. The same was held in Ohio under a statute against " forcible" breaking and entering. *Ducher v. State*, 18 Ohio, 308. But it is claimed that in this state the common-law doctrine of constructive breaking has no application to a case of this kind, and in fact is superseded by statute, ex-cept in so far as it is re-affirmed. Thus: " *Any unlawful entry of* a dwelling-house or other building with intent to commit a felony, shall *be deemed* a breaking and entering of such dwelling-house or other building, within the mean-ing of the last four sections." Sec. 4411, R. S. This sec-tion merely establishes a rule of evidence whereby the scope of constructive breaking is enlarged so as to take in " *any* unlawful entry of a dwelling-house or other building with intent to commit a felony." See *State v. Kane*, 63 Wis. 262. It in no way narrows the scope of constructive breaking, as understood at common law, but merely en-larges it in the particulars named. In all other respects such constructive breaking signifies the same as at common law. It necessarily follows that as the word " break," used in sec. 4410, had obtained a fixed and definite meaning at

common law when applied to a dwelling-house proper or other buildings within the curtilage, the legislature must be presumed to have used it in the same sense when therein applied to other statutory breakings. *Ex parte Vincent*, 26 Ala. 145, 62 Am. Dec. 714; Bish. Stat. Crimes, §§ 7, 88; *Ducher v. State, supra.* That is to say, they must be deemed to have used the word as understood at common law in relation to the same or a like subject matter. We must hold the evidence sufficient to support the charge of breaking.

3. It is said that the second count does not charge the offense to have been committed in any place prohibited by law; "that the freight and express car of the American Express Company" mentioned therein does not describe a "railroad freight car or passenger car," mentioned in sec. 4410, R. S. One of the definitions of a car given by Webster is: "A carriage for running on the rails of a railway," illustrated by the picture of a "railway car," with these two words beneath it. Every "express car" must be a "freight car," and, to make it certain, the charge is, "the freight *and* express car;" but it does not follow that every "railroad freight car" is an "express car." Both courts and juries may take judicial notice of what everybody knows respecting the common incidents of railway and express carriage. *Downey v. Hendrie*, 46 Mich. 498; *Queen v. Ruscoe*, 8 Adol. & E. 386. Among these is the fact that an express car is a railroad car. We think the information sufficiently definite in this regard, especially after verdict. *Queen v. Stroulger*, L. R. 17 Q. B. Div. 327.

4. It is said that there was no proof that the car mentioned was the property of the American Express Company. But the question was collateral, or at least incidental, to the real issue involved, and absolute proof of ownership was not essential. The proof of the exclusive possession, occupancy, and control of the car by the express company, therefore, was sufficient proof of ownership. *Ducher v.*

*State,* 18 Ohio, 315, 316; *Huling v. State,* 17 Ohio St. 583; *State v. Parker,* 16 Nev. 79; *Markham v. State,* 25 Ga. 52. Especially is this so under our statute. Sec. 4621, R. S. Otherwise it might be at times very difficult, if not impossible, to convict, when the offense was committed in the freight car of a distant company, notwithstanding all the essential facts constituting the offense might be readily established. It is not like an entire failure of proof of title of real estate, as in *Jackson v. State,* 55 Wis. 589. The jury were not bound to find beyond a reasonable doubt the ownership of such car, or whether it belonged to the express company or the railway company, and the instructions asked to the contrary were properly refused.

5. During the argument of the case the district attorney animadverted to the jury upon the fact that the prisoner had not been sworn, to which his counsel objected; whereupon the court ruled: " It is probably competent to show that the offense has not been denied." The language of the district attorney is not preserved in the bill of exceptions. It merely appears that he animadverted upon the fact of his not being sworn; and the court thereupon, in effect, indicated that he was at liberty to argue to the jury that the offense had not been denied. It was a fact necessarily known to the jury that the prisoner had not been sworn. The undisputed evidence included the prisoner's voluntary admissions of guilt. Under such circumstances, and in the absence of just what was said by the district attorney, and the occasion of it, we must presume that something occurred or was said which rendered such remark proper. *Williams v. State,* 61 Wis. 290; *Hoffmann v. State,* 65 Wis. 46; *Hinton v. Cream City R. Co.* 65 Wis. 331-333; *Gallinger v. Lake Shore Traffic Co.* 67 Wis. 529.

Other exceptions are sufficiently considered in what has already been said.

*By the Court.*— The judgment of the circuit court is affirmed.