LEVESQUE, Plaintiff in error, v. STATE, Defendant in error.

*No. State 67. Submitted under sec. (Rule) 251.54 April 3, 1974.— Decided May 7, 1974.*
(Also reported in 217 N. W. 2d 317.)

The cause was submitted for the plaintiff in error on the briefs of *Howard B. Eisenberg,* state public defender, and *Richard M. Sals,* assistant state public defender, and for the defendant in error on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

HALLOWS, C. J.   Before accepting Levesque's plea of guilty, the trial court heard the testimony of an arresting police officer, but Levesque now claims the facts do not sustain the conviction of burglary under sec. 943.10 (1) (a), Stats.,[1] because he entered the building with the consent of the owner. The facts are somewhat bizarre and undisputed.   Levesque entered the Suburpia Submarine Sandwich Shop in downtown Milwaukee at 1:30 a. m. when it was open to the public. He had a cup of coffee and about 2 a. m., entered the men's room, removed a tile from the ceiling, crawled into the space above the ceiling, positioned himself on top of some pipes, replaced the tile, and waited. At about 3:35 a. m., after the employees had left the restaurant, Levesque emerged from his hiding place and entered the kitchen. There he found an unlocked safe and took from it the money that was there. About this time the police came and Levesque hid.

---

[1] "943.10 **Burglary.** (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than 10 years:

"(a) Any building or dwelling; . . ."

The police made a search of the premises and discovered Levesque hiding under a counter in the kitchen at the rear of the building. On top of the counter, the police observed a Suburpia money bag containing rolls of coins. Levesque was then arrested. Levesque acknowledges the facts as testified by the policeman were true and correct and that he had the intent to steal when he entered the restaurant.

We find no merit in Levesque's contention the facts do not sustain the conviction. Levesque argues that if he should have been charged with burglary at all, it should have been under sec. 943.10 (1) (e), Stats.,[2] rather than under sub. (1) (a) of sec. 943.10. Sub. (1) (e) deals with the unlawful entry into a room and Levesque claims the only room not open to the public which he entered was the kitchen and that as to the rest of the building, the dining room and the men's room, he had permission to enter as a member of the public. This argument is as ingenious and as unsuccessful as his idea of concealing himself in a false ceiling in order to carry out his intention to steal.

To constitute the crime of burglary under sec. 943.10 (1) (a), Stats., one must enter the building without the consent of the person in possession. Concurrently with the entry he must have the intention to steal or commit a felony. It has been broadly stated that entry into a place while open to the general public is with consent (*see* sec. 943.10 (3)). Such entry by the general public to a building is impliedly conditioned by time, place and purpose. It is the extent and scope of the consent of the one in possession which determines the legality of the

[2] "943.10 **Burglary.** (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than 10 years:

". . .

"(e) A room within any of the above."

entry and presence of the public within the structure. Entry into a building means more than the passing through a door or opening; it includes the idea of presence within the building resulting from passing through the door or opening. The consent of the one in possession of a building, if he be a merchant, is impliedly conditioned by the purpose of doing business with the merchant in the area set aside for that purpose. The consent given to the public to enter is not for all things and all purposes. A hawker of baubles is a member of the public who does not have the consent of a jeweler to enter his store to sell baubles in the aisles. Levesque had consent to enter the restaurant as a member of the public for the purpose of eating and drinking in the restaurant. When the restaurant closed for the night, that consent was terminated and Levesque was inside without consent; not only that, but he was in an area not open to the public. His entry *ab initio* was without consent within the meaning of the term in sec. 943.10.

The facts of this case are somewhat analogous to the interesting case of *Nicholls v. State* (1887), 68 Wis. 416, 32 N. W. 543, at least in the ingenious way the defendants attempted to use lawful permission to be present in an unauthorized place. In *Nicholls* the defendant had hidden himself in a large box and had the box shipped with himself in it *via* a railroad express freight car with the intention of robbing the agent in charge of the car who he knew to be carrying a large sum of money. The railroad was suspicious of the box and had an armed police officer board the train. The officer opened the box and discovered the defendant who was charged and convicted of burglary of the express freight car. The defendant contended there was no breaking in of the car and the court agreed there was no such breaking in in the sense of breaking a lock or opening the door with a key or lifting a latch or severing or mutilating the door. "On the

contrary, the box was placed in the express car with the knowledge, and even by the assistance, of those in charge of the car. But it was not a passenger car, and the plaintiff in error was in no sense a passenger." The court went on to say in finding the express car was a prohibited area for persons, that the express company "may have at times transported animals, birds, . . . but it may be safely assumed that it never knowingly undertook to transport men in packages or boxes for special delivery."

But more importantly, the court stated "The plaintiff in error knew that he had no right to enter the express car at all without the consent of those in charge. The evidence was sufficient to justify the conclusion that he unlawfully gained an entrance without the knowledge or consent of those in charge of the car, by false pretenses, fraud, gross imposition, and circumvention." In the instant case, Levesque in hiding himself in the false ceiling of the men's room perfected by false pretenses and fraud his otherwise lawful entrance to the restaurant and rendered it unlawful. Prophetically, the court in *Nicholls* stated, page 421, "the law will not suffer itself to be trifled with by such evasions, especially under the cloak of legal process." On the effect of the right to enter premises, 12 C. J. S., *Burglary*, p. 675, sec. 11, states: "Entering a place where one has a right to be, although with intent to commit a crime, is not burglary; but one having a general right to be in a building may be guilty of burglary where he enters at a time or place beyond his authority." To this, we would add "or remains at a time or place beyond his authority." "Entry" in sec. 943.10 (1) (a), Stats., must be construed to mean not only the simple act of passing through the outer wall of a structure but also the result of such action, namely, presence within the structure.

Levesque's second argument is the other side of the same coin as his first argument. It is addressed to an alleged error in the proceeding in which the motion to withdraw the guilty plea was denied. This court having decided the facts admitted by Levesque constitutes the crime of burglary under sec. 943.10 (1) (a), Stats., we now conclude the trial court complied with the requirements of *Ernst v. State* (1969), 43 Wis. 2d 661, 170 N. W. 2d 713, in determining that a factual basis existed for the plea of guilty.

But Levesque further argues he was denied an evidentiary hearing on his motion to withdraw his guilty plea and was unable to prove a manifest injustice as a basis for his motion to withdraw the plea of guilty as prescribed by *State v. Reppin* (1967), 35 Wis. 2d 377, 151 N. W. 2d 9. A motion to withdraw the plea of guilty was prepared by the state public defender's office, which was based on three grounds: (1) Levesque's conduct did not constitute burglary as defined in sec. 943.10 (1) (a), Stats.; (2) the court did not adequately ascertain the defendant understood the nature of the offense charged; and (3) Levesque at the time of the arraignment was not able to understand the proceedings against him due to a mental disease or a mental defect. The first two of these grounds we have already considered in this opinion in reference to the writ of error to the conviction. This leaves only the third ground for consideration. This motion recited merely the legal grounds upon which it was premised. There were no facts recited in support of the allegations. The motion was dated March 19, 1973, and was received and filed in circuit court on the following day. On April 5th, the motion came on for hearing but the state public defender requested an adjournment which was granted. On May 3d the motion came on for hearing but the trial court decided the motion without hearing evidence, relying on *Nelson v. State* (1972), 54 Wis.

2d 489, 195 N. W. 2d 629. The trial court considered an evidentiary hearing was not necessary in view of the lack of facts alleged in the motion. In respect to the first two grounds asserted, the court concluded the record conclusively refuted the general allegations and in respect to the third ground asserted the court held the petition contained only conclusory allegations. The state public defender requested permission to comment for the record but this request was denied and under the circumstances we think properly so. An attorney should not be allowed to create evidence by way of oral argument in the record. Petitions should allege facts sufficient to call forth the proof thereof.

Being unable to get his evidence in the record, the state public defender on the following day prepared an affidavit, which was received and filed in the circuit court on May 7, 1973. This affidavit purported to inform the circuit court what the state public defender would have put in the record if he had been given the opportunity on May 3d. In explaining the situation, Levesque in his brief states the adjournment of the hearing from April 5th to May 3d was for two reasons: (1) The district attorney failed to issue an order to produce Levesque, and (2) the state public defender requested more time to gather psychiatric evidence. The record is barren of any evidence to support these claims. The transcript of the hearing specifically recites Levesque was in court; moreover, there is no statement in the transcript of the state public defender about "gathering psychiatric evidence."

Consequently, these statements in the brief are *dehors* the record. In the affidavit of the state public defender there is a reference to a brief in paragraph 6 (a), which the state public defender claims to have submitted to the court and opposing counsel prior to April 5, 1973, in support of the motion but the trial brief is not part of the record nor was a copy appended to the affidavit. Like-

wise, there is a reference to a conference in chambers which is claimed to have taken place on April 5th, in which the state public defender claims to have informed the court and opposing counsel that he had learned Levesque was undergoing withdrawal at the time of arraignment and that he, the state public defender, was awaiting documentation of that fact from the doctors of the state prison. No record of this conference was made. From the face of the affidavit, it is apparent that prior to the scheduled hearing of April 5th and May 3d the state public defender had obtained medical documentation tending to support the charge that Levesque had been in withdrawal at the time of his arraignment. Although this information was in the possession of the state public defender, it was not presented to the trial court on either of those dates. While it is true the medical reports were not received until March 23d, which was after the motion had been filed, it was possible for the state public defender to submit the reports he had on hand on April 5th when he asked for adjournment and most certainly before the May 3d hearing date.

As this matter stood before the trial court on May 3d, it would appear it was controlled by *Nelson v. State, supra.* In *Nelson,* the defendant moved to withdraw his plea of guilty of manslaughter. He also filed a postconviction relief motion pursuant to sec. 974.06, Stats. Both motions were denied without an evidentiary hearing. The affidavit in support of the motion to vacate the guilty plea recited "[S]aid plea was not made voluntarily after proper advice from counsel and with a full understanding of the consequences of said plea but rather it was obtained unfairly [through] the ignorance and fear of said affiant." In respect to this motion to withdraw the plea, this court extensively reviewed the federal cases under federal criminal Rule 32 (d) and announced the rule applicable in this state as follows:

". . . if a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing. However, if the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing." 54 Wis. 2d at 497, 498.

This statement sets forth the rule both in its affirmative and in its negative aspect. We see no difference in substance in formulating the rule, both affirmatively and negatively, and point out the statute in relation to postconviction relief under sec. 974.06 states the rule negatively.[3] Consequently, the test of whether there should be an evidentiary hearing, *i.e.,* that the petitioner will be given an opportunity to prove the allegations in the motion is the same both for a motion to withdraw a plea under the guidelines of *State v. Reppin, supra,* and for the more limited motion for postconviction relief under sec. 974.06. In both cases the facts must be alleged in the petition and the petitioner cannot stand on conclusory allegations, hoping to supplement them at a hearing. With the vast amount of work this court and the trial courts have with petitions for postconviction relief, some of them duplications, many of them filed with only a last hope or chance, and some of them filed without factual basis, there is need for a prescreening procedure which is fair to the petitioner and to the courts. If there is merit in the facts, it should be an easy matter and a prime requisite to state those facts in the petition so they can be evaluated at the commencement of the pro-

[3] "974.06 Post-conviction procedure. . . .

"(3) Unless the motion and the files and records of the action conclusively show that the prisoner is entitled to no relief, the court shall: . . .

"(c) Grant a prompt hearing."

ceeding. A statement of ultimate facts which may be sufficient to sustain a complaint against a demurrer is not sufficient for a petition for postconviction relief, a petition to withdraw a plea or a motion for a new trial.

Levesque relies on *Fontaine v. United States* (1973), 411 U. S. 213, 93 Sup Ct. 1461, 36 L. Ed. 2d 169, but in *Fontaine* the petition alleged facts. The defendant filed his federal postconviction relief motion under 28 U.S.C., sec. 2255, to vacate his sentence on the ground his plea of guilty had been induced by a combination of fear, coercive police tactics, and illness including mental illness. The supreme court stated the motion set out detailed factual allegations describing physical abuse and illness from a recent gunshot wound which required hospitalization which was documented by records tendered in support of the petition. On this record, we find no error in the trial court in not granting an evidentiary hearing on the motion to withdraw the plea of guilty.

*By the Court.*—Judgment and order affirmed.