STATE of Wisconsin, Plaintiff-Respondent,†

v.

Corey J. HAMPTON, Defendant-Appellant.

Court of Appeals

*No. 01–0509–CR. Submitted on briefs September 12, 2001.— Decided November 27, 2002.*

**2002 WI App 293**

(Also reported in 655 N.W.2d 131.)

† Petition to review granted 2-19-03.

455

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Melinda A. Swartz*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Joanne F. Kloppenburg*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Dykman, Roggensack and Lundsten, JJ.

¶ 1. LUNDSTEN, J. Corey Hampton appeals orders denying his motion for plea withdrawal. Hampton contends his plea colloquy was defective because the circuit court failed to personally inform him that the court was not bound by the terms of a plea agreement. Hampton asserts he made a *prima facie* showing under *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986), and was entitled to an evidentiary hearing on his plea withdrawal motion. He contends the circuit court improperly denied that motion without an evidentiary hearing. We conclude that Hampton made a *prima facie* showing and that his motion should not have been denied without an evidentiary hearing. We reverse and remand for further proceedings.

### *Background*

¶ 2. Corey Hampton was charged with second-degree sexual assault of a child. Among other things, it was alleged that Hampton penetrated his fifteen-year-old cousin's vagina with his finger and had oral contact with her vagina. This charge carried a potential prison term of twenty years. *See* Wis. Stat. §§ 939.50(3)(bc) and 948.02(2) (1997–98).[1] Hampton entered an *Alford* plea pursuant to an agreement in which the State agreed (1) to recommend an imposed and stayed prison term of seven years, and (2) to recommend seven years' probation with nine to twelve months' jail time as a condition.

¶ 3. Hampton is an educated man. He has completed six years of education at "UW-M" and has two college degrees. Prior to the plea hearing, Hampton's

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

attorney reviewed a two-page plea questionnaire with Hampton. Item ten on that questionnaire states:

> I understand that the Judge is not bound to follow any plea agreement or any recommendation made by the District Attorney, my attorney, or any presentence report. I understand that the Judge is free to sentence me to the following . . . maximum possible penalties in this case.

Immediately below this language the questionnaire identifies Hampton's crime and states: "Years: 20" and "Fine: $10,000."

¶ 4. Item fifteen of the plea questionnaire states: "I have read (or have had read to me) this entire questionnaire, and I understand its contents." Item fifteen is followed by a handwritten date and Hampton's signature. In response to questions from the circuit court, Hampton agreed that his counsel read the information in the plea questionnaire to him and that he, Hampton, signed both sides of the form. Hampton's trial counsel signed the questionnaire, attesting that "the defendant acknowledged his understanding of each item in this questionnaire." Although the circuit court engaged in a lengthy plea colloquy, the court did not in any manner personally tell Hampton that it was not bound by the plea agreement.

¶ 5. At Hampton's later sentencing hearing, the circuit court rejected the State's recommended disposition. The court placed Hampton on probation and ordered twelve months' jail time as a condition, in keeping with the agreement. However, instead of an imposed and stayed seven-year prison term, as recommended by the State pursuant to the plea agreement, the court imposed and stayed a twelve-year term. Also,

the probationary period imposed was twelve years, rather than the recommended seven-year period.

¶ 6. Hampton later filed a plea withdrawal motion asserting that the circuit court failed to personally advise him it was not bound by the plea agreement sentencing recommendation. The motion also asserted that Hampton did not, at the time of his plea, understand that the court was not bound by the plea agreement sentencing recommendation. Hampton requested an evidentiary hearing to resolve any factual dispute raised by his motion. The circuit court denied the motion without an evidentiary hearing.[2]

---

[2] The underlying facts in this case are more complex than our "Background" factual summary suggests, but none of the additional complexities bear on any issue on appeal. For example, the plea agreement gave Hampton a choice of options and we have only recited the option he ultimately chose at sentencing. Also, Hampton's plea withdrawal request was made twice before two judges. Judge Mel Flanagan, who presided over Hampton's plea hearing, rejected Hampton's first plea withdrawal motion without a hearing. Hampton appealed Judge Flanagan's decision and, after obtaining new counsel, voluntarily dismissed his appeal, returned to the trial court, and filed a second plea withdrawal motion. This motion was heard by Judge Dennis P. Moroney. Judge Moroney rejected Hampton's second motion, also without a hearing. Although technically this appeal is taken from both Judge Flanagan's order and Judge Moroney's order, we only address Judge Moroney's order. Neither Hampton nor the State suggests that the issues in this case are affected by the fact that Hampton made two plea withdrawal motions or that two different judges rejected the motions. Plainly, Judge Moroney's order deals with the same topic and supersedes Judge Flanagan's order. Because we are not presented with any challenges relating to these "complicating" facts, we ignore them for the sake of clarity in this opinion.

### *Discussion*

¶ 7. The instant case involves an exemplary plea colloquy, with one exception: the circuit court failed to *personally* inform Hampton that it was not bound by the terms of the negotiated plea agreement. Hampton contends that under *State ex rel. White v. Gray*, 57 Wis. 2d 17, 203 N.W.2d 638 (1973), and the procedure set forth in *Bangert*, 131 Wis. 2d 246, this omission was error. Hampton asserts he made a *prima facie* showing under *Bangert*, because he alleged the error and also alleged he did not understand that the circuit court was not bound by the plea agreement. Hampton contends that once he made this *prima facie* showing, he was entitled to an evidentiary hearing. He asserts the circuit court improperly denied his plea withdrawal motion without a hearing. We conclude that Hampton made a *prima facie* showing and that he was entitled to an evidentiary hearing on his motion.

### *A. Whether Hampton Made a Prima Facie Showing*

¶ 8. Under the burden-shifting framework set forth in *Bangert*, defendants must make a *prima facie* showing that their guilty or no contest pleas were accepted without compliance with Wis. Stat. § 971.08 or another court-mandated duty. Such defendants must also allege that they did not know or understand the information at issue. *Bangert*, 131 Wis. 2d at 274. Whether a defendant has established a *prima facie* case presents a question of law, which we review without deference to the trial court's determination. *State v. Hansen*, 168 Wis. 2d 749, 754–55, 485 N.W.2d 74 (Ct. App. 1992). If a defendant makes this initial showing, the burden shifts to the State to show by clear and

convincing evidence that the plea was knowingly and voluntarily entered. *Bangert*, 131 Wis. 2d at 274–75.

¶ 9. Neither *Bangert* nor WIS. STAT. § 971.08 says that a court must *personally* inform a defendant entering a plea that the court is not bound by the terms of a plea agreement. Nonetheless, this task was judicially mandated in *Gray*, a seminal Wisconsin case requiring that plea agreements be put on the record. In *Gray*, the court adopted language in the ABA STANDARDS RELATING TO PLEAS OF GUILTY, stating: " 'If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, the court must advise the defendant *personally* that the recommendations of the prosecuting attorney are not binding on the court.' " *Gray*, 57 Wis. 2d at 24 (quoting ABA STANDARDS RELATING TO PLEAS OF GUILTY, Approved Draft 1968, § 1.5, at 29 (emphasis added)).

¶ 10. It can be argued that because the *Gray* "personally inform" requirement is a duty neither imposed by WIS. STAT. § 971.08, nor expressly imposed by *Bangert*, the failure to comply with *Gray* does not fall under the *Bangert* methodology. The proposition is debatable, but ultimately unpersuasive.

¶ 11. In *Bangert*, the supreme court states: "Nor do we discard the general duties of the trial court prior to accepting a plea of guilty or no contest." *Bangert*, 131 Wis. 2d at 261. The court goes on to say "[t]hose duties are" and then lists duties found in *Ernst v. State*, 43 Wis. 2d 661, 674, 170 N.W.2d 713 (1969). *Bangert*, 131 Wis. 2d at 261–62. Later, the *Bangert* court specifies requirements: "(a) the procedures set forth in sec. 971.08(1); (b) the additional procedures which we now

464

make mandatory; and (c) those procedures already enumerated and mandated in *Ernst*." *Id*. at 272–73. Because the *Bangert* decision lists required duties and does not mention the *Gray* requirement, the question arises whether the supreme court intended to abandon the *Gray* requirement. We conclude the answer is no because the supreme court has reiterated the *Gray* requirement in at least two post-*Bangert* decisions: *State v. McQuay*, 154 Wis. 2d 116, 128, 452 N.W.2d 377 (1990) ("[W]hen a plea agreement contemplates charge or sentence concessions which must be approved by the court, the court must *personally* advise the defendant that the agreement is in no way binding on the court." (Emphasis added.)), and *State v. Comstock*, 168 Wis. 2d 915, 928 n.11, 485 N.W.2d 354 (1992) ("The court must *personally* advise the defendant that the [plea] agreement is in no way binding on the court." (Emphasis added.)). Accordingly, we conclude that circuit courts must personally inform defendants that courts are not bound by plea agreement terms, and further conclude that this requirement is subject to review under the *Bangert* analysis.

¶ 12. It appears the State agrees with the general notion that the *Gray* requirement survives and is enforced by *Bangert*. In the context of discussing *Bangert* requirements, the State's brief says: "The Wisconsin Supreme Court has imposed additional duties on the court, including [duties specified in *Bangert* and] that the [plea] agreement is not binding on the court." As support for this legal proposition the State cites to *Bangert* and that part of *McQuay* which relies on *Gray*. *See McQuay*, 154 Wis. 2d at 128.

¶ 13. What the State does dispute is whether a court must *personally* inform a defendant that it is not bound by the terms of a plea agreement. However, the

State's view that a court need not personally provide this information runs contrary to the plain language of *Gray*, *McQuay*, and *Comstock*. Each of these cases unambiguously specifies that a court must "personally" provide this information.

■

¶ 14. We observe that the requirement that courts "personally" provide the *information* at issue here stands in contrast to other plea colloquy duties which specify that courts must "personally" *make a determination or make an inquiry. E.g., Bangert*, 131 Wis. 2d at 262 ("personally ascertain whether a factual basis exists to support the plea"). *Bangert* and subsequent cases explain that the method of complying with requirements to "personally" make determinations and inquiries varies from case to case and may include reliance on documents or portions of the record predating the plea hearing. *See id.* at 267–69; *State v. Moederndorfer*, 141 Wis. 2d 823, 826–27, 416 N.W.2d 627 (Ct. App. 1987). Similarly, we observe that the "personally inform" requirement at issue here is an exception, not the rule. In general, a circuit court may ascertain a defendant's knowledge through a combination of questions and reference to the record or to a prior communication. *See Bangert*, 131 Wis. 2d at 267–68; *see also State v. Brandt*, 226 Wis. 2d 610, 619–20, 594 N.W.2d 759 (1999); *Hansen*, 168 Wis. 2d at 754; *Moederndorfer*, 141 Wis. 2d at 827–28. Indeed, our research discloses just one other decision plainly stating that a court must personally provide particular information to a defendant during a plea colloquy. *See State v. Douangmala*, 2002 WI 62, ¶ 31, 253 Wis. 2d 173, 646 N.W.2d 1 (construing the directive in Wis. Stat. § 971.08(1)(c) to advise of deportation consequences).

466

██

¶ 15. The parties' arguments regarding whether Hampton made a *prima facie* showing include discussions about the plea questionnaire and whether Hampton's signature on it shows that Hampton understood the circuit court was not bound by the plea agreement. This discussion is beside the point because the *prima facie* issue is not whether Hampton actually understood the information. A defendant's actual understanding is addressed, if at all, after the burden shifts to the State. *See Bangert,* 131 Wis. 2d at 275 ("In essence, the state will be required to show that the defendant in fact possessed the constitutionally required understanding and knowledge . . . ."); *State v. Mohr,* 201 Wis. 2d 693, 701, 549 N.W.2d 497 (Ct. App. 1996) ("second prong" asks whether defendant "indeed knew"). The issue here is whether the circuit court met its obligation under *Gray* to personally inform Hampton that it was not bound by the plea agreement.

██

¶ 16. As an alternative argument, the State contends that the circuit court met its duty to personally inform Hampton that it was not bound by the negotiated recommendation when the court informed Hampton that the potential maximum penalty for his crime was twenty years. We agree with Hampton, however, that the maximum penalty information could be understood to simply mean that Hampton faced a potential twenty-year sentence if he did not follow through with the plea agreement. To the extent the State is arguing that *Gray* and subsequent cases do not require magic words, we agree. Nonetheless, the problem here is that the circuit court did not personally convey to Hampton in any manner that it could reject the plea agreement sentencing recommendation. In the context of the plea

467

colloquy before us, personally providing maximum penalty information was insufficient to satisfy *Gray*.

¶ 17. Applying the above principles here, we conclude that Hampton made a *prima facie* showing. Hampton asserted in his plea withdrawal motion that the "trial court failed to inform him that it was not bound by the State's recommendation," and the plea colloquy supports that assertion. Hampton also alleged that he was actually unaware that the court could deviate from the plea agreement sentencing recommendation.

### B. Whether the Circuit Court Properly Denied Hampton's Plea Withdrawal Motion Without an Evidentiary Hearing

¶ 18. The circuit court did not address whether Hampton made a *prima facie* showing. Indeed, as discussed below, the circuit court's reason for denying Hampton's plea withdrawal motion is not transparent. Regardless, it is Hampton's contention that the circuit court could not deny his motion without an evidentiary hearing because he presented a *prima facie* case under *Bangert* and he requested a hearing. We agree.

¶ 19. The State asks us to apply *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996). We understand the State to be arguing that, under the approach used in *Bentley*, Hampton was not entitled to a hearing because the record conclusively demonstrated that Hampton was not entitled to relief. The State contends that the allegations in Hampton's plea withdrawal motion are conclusory and the record shows (1) that the disputed

information was read to Hampton by his attorney,[3] (2) that Hampton attested to his understanding of the information by signing the plea questionnaire form, and (3) that the information at issue is relatively easy to understand, especially for a person with Hampton's level of education.

¶ 20. Hampton responds that *Bentley* does not apply because the defendant in *Bentley* sought plea withdrawal based on ineffective assistance of counsel and, therefore, bore the burden of showing both ineffective assistance and the need for an evidentiary hearing. *See id.* at 311–12. In contrast, under *Bangert*, once a defendant makes a *prima facie* showing, the burden shifts to the State. *See Bangert*, 131 Wis. 2d at 274. Hampton contends that once he made a *prima facie* showing of a deficient colloquy, he was entitled to an evidentiary hearing on the issue of his actual understanding, regardless whether he made any additional factual allegations and regardless whether there was evidence in the existing record tending to show that he did understand.

¶ 21. We agree with Hampton's description of the differing burdens and conclude that the burden-shifting scheme imposed by *Bangert* is inconsistent with the

---

[3] In his reply brief before this court, Hampton says he alleged in his postconviction motion that "when going over the questionnaire his trial attorney did not explain to him that the court was not bound by the negotiations." It is true that Hampton's postconviction memorandum makes this factual assertion, but the more specific supporting affidavit, sworn to by postconviction counsel, does not back up this assertion. The affidavit states only that Hampton would testify: "He did not read the guilty plea questionnaire himself. His attorney briefly explained the form to him."

State's proposal that we apply *Bentley*. In effect, the State argues that Hampton not only had the burden of presenting a *prima facie* case, but also had the burden of making non-conclusory assertions about the evidence he would present at a hearing and why, if believed, his evidence would entitle him to relief. *Cf. Bentley*, 201 Wis. 2d at 313–18; *State v. Washington*, 176 Wis. 2d 205, 216, 500 N.W.2d 331 (Ct. App. 1993) ("[T]he motion must contain at least enough facts to lead the trial court to conclude that an evidentiary hearing is necessary."). Regardless whether the imposition of this additional burden makes sense in some *Bangert* situations, it is for the supreme court, not this court, to impose a different burden-shifting framework than the one set forth in *Bangert*.

¶ 22. It is understandable that the State, and perhaps some circuit courts, are inclined to apply *Bentley* to plea withdrawal cases such as this. In *Bentley*, the defendant alleged that his trial counsel gave him wrong information and that, absent this wrong information, he would have pled differently. *Bentley*, 201 Wis. 2d at 316. The *Bentley* court held that in order for defendant Bentley to earn the right to an evidentiary hearing, he needed to allege facts which, if true, would entitle him to relief. *Id.* at 313–18. Under *Bentley*, a circuit court has discretion to deny a postconviction motion without an evidentiary hearing "if the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief." *Id.* at 309–10 (citation omitted). In effect, *Bentley* requires written allegations showing that there is a reason to hold an evidentiary hearing and that the defendant is not simply on a fishing expedition. We understand the temptation of busy trial

courts to place the same burden on defendants like Hampton. Similar to Bentley's bald assertion that he would not have pled guilty had he been given correct information, *id.* at 316, Hampton made a bald assertion that he did not understand that the circuit court was not bound by the negotiated sentencing recommendation. As was apparently true in *Bentley*, the prosecutor here was content to rely on the record. And, as in *Bentley*, it was the defendant here who was in the best position to explain why, despite the record to that point, there was a need for an evidentiary hearing. However, fashioning a different burden-shifting scheme, one that might better fit the practicalities of busy trial courts and the nature of plea withdrawal requests, would be no easy task. Moreover, such an endeavor, if it is to be undertaken, is for the supreme court; this court is bound by the burden-shifting framework set forth in *Bangert*.[4]

---

[4] The dissent states that this majority opinion "refuses to apply [*Levesque v. State*, 63 Wis. 2d 412, 217 N.W.2d 317 (1974)]." *Levesque*, however, predates *Bangert*'s "new approach" to handling the particular type of plea withdrawal argument made by Hampton. *See State v. Bangert*, 131 Wis. 2d 246, 274, 389 N.W.2d 12 (1986). At the time *Levesque* was decided, there was no procedure akin to the burden shifting imposed by *Bangert*. The pleading burden imposed on defendants in *Levesque* (and subsequently refined in *State v. Bentley*, 201 Wis. 2d 303, 548 N.W.2d 50 (1996)) is not inherently incompatible with burden shifting. But for the reasons in ¶¶ 18–21 of this opinion, we conclude it is incompatible with the specific burden-shifting scheme imposed by *Bangert*. At the same time, we readily acknowledge that *Bangert* does not apply to all plea withdrawal requests. For example, *Bangert* does not apply to plea withdrawal requests based on alleged ineffective assistance of counsel, exemplified by *Bentley*. More generally, *Bangert* does not apply unless the defendant asserts a defective plea colloquy.

¶ 23. Having rejected the State's proposal that we impose an additional pleading burden on Hampton, the question remains whether we may affirm the circuit court's decision to deny Hampton's motion based on other grounds. The circuit court explained its rejection of Hampton's motion with the following:

> When Hampton told the court that he and his attorney had gone over the form together, that trial counsel had read it to him, and that he had signed the form after he went over it with his lawyer, the court presumes this information to be true. His signature is intended to acknowledge his understanding of the form and its contents and *conclusively* advises the court of same. The court relies on a defendant's assertions when he is questioned about his understanding of the form, and subsequent claims that the form or its contents were really not understood simply renders the plea proceeding meaningless.

> Hampton's current claims are belied by the record in this case, and a hearing to ascertain whether the defendant *really* understood the form and its contents, after having represented that he *did,* simply defeats the purpose of the plea proceeding and the reason for filling out the forms and signing them. Hampton would have the court find that his signature on the bottom of the form, in reality, means nothing—until an evidentiary hearing can be held to determine if his acknowledgment is a true acknowledgment or a false acknowledgment of his understanding. The defendant's signature on the bottom of the form must be held to mean what

*E.g., State v. Fosnow*, 2001 WI App 2, ¶¶ 5, 8, 240 Wis. 2d 699, 624 N.W.2d 883 (*Bangert* not applied to claim that plea was not knowingly and voluntarily entered because defendant was not aware at the time of the plea that he had Dissociative Identity Disorder).

it represents, and subsequent claims that "I really didn't know what the form said" completely undermine the finality of guilty pleas.

¶ 24. The circuit court's comments may be read at least two ways. First, that a defendant should never be able to contradict his or her attestation of understanding as evidenced by his or her signature on a plea questionnaire. If this is what the circuit court meant, the error is obvious. While a plea questionnaire may be used as evidence that a defendant actually understood a particular piece of information contained in the questionnaire, a signed questionnaire does not conclusively establish actual knowledge and understanding. In plea withdrawal proceedings, defendants may present evidence showing that, despite their signature on a plea questionnaire, they entered a plea without understanding some piece of information in the questionnaire. *See, e.g., State v. Bollig*, 2000 WI 6, ¶¶ 4–5, 52–55, 232 Wis. 2d 561, 605 N.W.2d 199 (signed plea questionnaire was not conclusive evidence that defendant understood elements of crime listed in questionnaire).

¶ 25. A second interpretation of the circuit court's comments is that the court did not find Hampton's new contrary assertion to be credible. If this is the court's meaning, the error is twofold. First, for the reasons set forth in ¶¶ 21–22 of this opinion, Hampton was not obligated to summarize in his plea withdrawal motion the evidence he might present at the requested hearing. Thus, any credibility finding by the court was made without Hampton's full explanation, or at least without affording Hampton his right to present a full explanation if he chose to do so. Second, the circuit court's procedure runs contrary to the general rule that cred-

473

ibility issues are resolved by live testimony. *See State v. Leitner*, 2001 WI App 172, ¶ 34, 247 Wis. 2d 195, 633 N.W.2d 207; *see also Johnson Bank v. Brandon Apparel Group, Inc.*, 2001 WI App 159, ¶ 15, 246 Wis. 2d 828, 632 N.W.2d 107. Hampton, unlike the defendant in *Leitner*, did not invite the circuit court to resolve a factual dispute based on written assertions. *See Leitner*, 2001 WI App 172 at ¶ 34. Rather, Hampton specifically requested a hearing "to resolve the questions of fact and law presented by [his] motion."

¶ 26. Accordingly, we remand for an evidentiary hearing on the question whether Hampton understood, at the time of his plea, that his sentencing court would not be bound by the recommended sentence contained in the plea agreement. We do not suggest that the circuit court must give any particular weight to Hampton's live testimony, should he decide to testify. The circuit court is free to disbelieve Hampton, even if the only contrary evidence is the evidence relied on by the State thus far, including Hampton's education and the signed plea questionnaire. We only hold that because Hampton made a *prima facie* showing under *Bangert*, and requested an evidentiary hearing to resolve factual disputes, it was error to resolve the credibility issue without giving Hampton an opportunity to present evidence.

### Conclusion

¶ 27. For the above reasons, we reverse the order denying Hampton's plea withdrawal motion without an evidentiary hearing. Hampton's motion is reinstated and the matter is remanded to give Hampton an oppor-

tunity to renew his request for an evidentiary hearing and for further proceedings consistent with this opinion.

*By the Court.*—Judgment and orders reversed and cause remanded with directions.

¶ 28. ROGGENSACK, J. *(dissenting).* The majority opinion concludes that Hampton made a *prima facie* showing that his plea was not knowing, voluntary and intelligent because the circuit court did not *personally* tell him during its colloquy that it was not bound by the plea agreement, notwithstanding Hampton's signing a plea questionnaire that his trial lawyer had read to him that represented to the court that he knew that the circuit court was not bound.[1] Then, after concluding that the plea colloquy was defective, the majority also concludes that Hampton has the right to an evidentiary hearing on his motion to withdraw his plea because his lawyer's statement appended to the motion contends that Hampton would testify that he did not understand that the circuit court was not bound by his plea agreement with the State. However, even if I were to assume that the circuit court had an obligation to

---

[1] The plea questionnaire states:

10. I understand that the Judge is not bound to follow any plea agreement or any recommendation made by the District Attorney, my attorney, or any presentence report. I understand that the Judge is free to sentence me to the following minimum (if applicable) and maximum possible penalties in this case.

It then lists the penalty for the crime charged, second degree sexual assault, as 20 years in prison and a $10,000 fine. Additionally, his trial attorney attested on the form that he had discussed and explained the contents of the questionnaire to Hampton and that Hampton acknowledged his understanding of each item in the questionnaire.

475

*personally* tell Hampton during its colloquy that it was not bound by his plea agreement,[2] Hampton's motion is insufficient to support a right to a hearing because it alleges only a conclusion or "ultimate fact," rather than setting forth evidentiary facts, which if proved true, would show why he did not understand then what he claims now not to have understood. Therefore, because I conclude that the circuit court's decision not to grant a hearing on Hampton's motion was discretionary and because the record demonstrates a rational exercise of discretion, I would affirm the circuit court's order. Accordingly, I respectfully dissent.

## Standard of Review.

¶ 29. We independently review whether a plea was knowingly, voluntarily and intelligently entered as a question of constitutional fact. *State v. Bollig*, 2000 WI 6, ¶ 13, 232 Wis. 2d 561, 605 N.W.2d 199. As part of that analysis, we begin by determining whether a defendant made a *prima facie* case sufficient to show that the circuit court violated WIS. STAT. § 971.08 (1999–2000), as interpreted by the Wisconsin Supreme Court or this court. If we conclude that the defendant made a *prima facie* case, we examine the motion and supporting affidavits to determine whether, as a matter of law, a hearing is required. *State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50, 53 (1996). However, if the motion fails to allege sufficient evidentiary facts which

---

[2] I have significant doubts about the majority's analysis of the manner in which a circuit court must undertake its obligation to assess whether the defendant knew it was not bound by the plea agreement. However, because I would affirm the circuit court even if I were to conclude that the court's colloquy with Hampton was inadequate, I do not address this issue.

if proved would entitle the defendant to withdraw his plea, the circuit court has the discretion to deny the motion without a hearing. *Id.* at 310–11, 548 N.W.2d at 53.

### Sufficiency of Hampton's Pleadings.

¶ 30. I agree that the circuit court did not directly bring up the effect of Hampton's plea bargain in relation to the sentence it could impose for his crime, before accepting his plea. I also agree that it is the obligation of the circuit court to assess whether Hampton understands that the circuit court is not bound to follow the plea agreement in its sentencing decision. However, in order to have the right to an evidentiary hearing on his motion, Hampton was required to state those facts in his petition, which if proved to be true, would entitle him to withdraw his plea. The supreme court has consistently held that conclusory allegations are insufficient to require a hearing on a postconviction motion for plea withdrawal. *Bentley*, 201 Wis. 2d at 313, 548 N.W.2d at 54 (citing *Levesque v. State*, 63 Wis. 2d 412, 217 N.W.2d 317 (1974)). As the supreme court explained in *Levesque*, "[a] statement of ultimate facts which may be sufficient to sustain a complaint against a demurrer is not sufficient for a petition for postconviction relief, a petition to withdraw a plea or a motion for a new trial." *Levesque*, 63 Wis. 2d at 422, 217 N.W.2d at 322.

¶ 31. In *Levesque*, a defendant who sought to withdraw his guilty plea was denied an evidentiary hearing. His motion provided:

(1) Levesque's conduct did not constitute burglary as defined in sec. 943.10(1)(a), Stats.; (2) the court did not adequately ascertain the defendant understood the nature of the offense charged; and (3) Levesque at the

time of the arraignment was not able to understand the proceedings against him due to a mental disease or a mental defect.

*Id.* at 418, 217 N.W.2d at 320. The court's opinion addressed only the third contention, Levesque's purported lack of understanding due to a mental disease or defect. The court concluded that the motion was insufficient to require a hearing because Levesque had not alleged evidentiary facts to support his assertion that he did not understand. *Id.* The court explained that he had alleged only "legal grounds" for his motion, *id.*, or "ultimate facts." *Id.* at 422, 217 N.W.2d at 322. As was explained again in *Bentley*, motions to withdraw a plea after sentencing cannot rely on conclusory allegations, hoping to supplement them with evidentiary facts at a subsequent hearing. *Bentley*, 201 Wis. 2d at 313, 548 N.W.2d at 54.

¶ 32. Here the only affidavit to support Hampton's motion is the hearsay statement of his attorney attesting to what Hampton would say if he were called at a hearing. It states in relevant part that:

> 3.a. At the time he entered his *Alford* plea, he did not know that the court was not bound by the State's recommendation and was free to sentence him to whatever sentence it deemed appropriate.

> b. Had he known that the court was not bound by the State's recommendation, he would not have pled guilty but would have asserted his right to a jury trial.

¶ 33. Aside from the obvious evidentiary problems with providing a hearsay statement to the circuit court, the allegations made on Hampton's behalf are conclusory, self-serving statements, facially insufficient to require the circuit court to hold a hearing. In my

478

view, the majority errs because it refuses to apply *Levesque*, a plea withdrawal case cited in *Bentley*, that requires Hampton to provide the circuit court with sufficient evidentiary facts to entitle him to withdraw his plea if those facts are proven, before he is entitled to a hearing on his motion. *Bentley*, 201 Wis. 2d at 313, 548 N.W.2d at 54. Hampton did not carry that burden. Furthermore, when faced with Hampton's motion, the circuit court carefully explained why it was exercising its discretion to deny the motion without a hearing. Accordingly, because I conclude that Hampton did not have a right to a hearing and that the circuit court did not erroneously exercise its discretion in denying his motion without a hearing, I would affirm its order. Therefore, I respectfully dissent.