STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Corey J. HAMPTON, Defendant-Appellant.

Supreme Court

*No. 01–0509–CR. Oral argument September 17, 2003.—Decided July 8, 2004.*

2004 WI 107

(Also reported in 683 N.W.2d 14.)

ROGGENSACK, J., took no part.

For the plaintiff-respondent-petitioner the cause was argued by *Jennifer E. Nashold,* assistant attorney general, with whom on the briefs was *Peggy A. Lautenschlager,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Melinda A. Swartz,* assistant state public defender.

¶ 1. DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *State v. Hampton,* 2002 WI App 293, 259 Wis. 2d 455, 655 N.W.2d 131. The court of appeals reversed an order of the Milwaukee County Circuit Court, denying the defendant's postconviction motion to withdraw his plea without first conducting an evidentiary hearing on the motion. At the earlier plea hearing, the circuit court neglected to advise the defendant personally that the court was not bound by his plea agreement with the State. Later the court imposed a longer stayed sentence and a longer period of probation than the State had agreed to recommend. The court of appeals concluded that the defendant had made a *prima facie* showing under *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986), that he was entitled to an evidentiary hearing on his motion to withdraw the plea.

¶ 2. This review presents three issues. First, in taking a plea of guilty or no contest from a criminal defendant, must the circuit court advise the defendant personally on the record that the court is not bound by a plea agreement and ascertain whether the defendant understands this information? We conclude that the answer is "yes," thereby affirming the decision in *State ex rel. White v. Gray,* 57 Wis. 2d 17, 203 N.W.2d 638 (1973).

¶ 3. Second, what is the appropriate way for a circuit court to advise the defendant personally that a plea agreement is not binding on the court? We conclude that there is no single, inflexible way for the court to discharge this duty, but the most logical, consistent,

and efficient method is for the court to personally deliver an explanation to the defendant and then ascertain whether the defendant understands that the court is not bound by a plea agreement. The court may not discharge this duty by anything less than a personal dialogue.

¶ 4. Third, is the circuit court required to conduct an evidentiary hearing on a defendant's motion to withdraw his plea when the motion points to the court's failure in the plea colloquy to advise the defendant personally that the court was not bound by the plea agreement, and the defendant also alleges that he did not understand that the court was not bound by the plea agreement? We conclude that the answer is "yes," because the defendant will have made the requisite showing for an evidentiary hearing, as provided in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

¶ 5. On the facts presented, we conclude that the circuit court was required to conduct an evidentiary hearing to determine whether Corey Hampton's plea was knowingly, voluntarily, and intelligently entered. Consequently, we affirm the decision of the court of appeals and remand to the circuit court for action consistent with this opinion.

I. PROCEDURAL HISTORY AND
FACTUAL BACKGROUND

¶ 6. The relevant facts are not in dispute. On September 16, 1998, Corey J. Hampton was charged with second-degree sexual assault of a child, a felony that carried a potential prison term of 20 years. *See* Wis.

Stat. §§ 939.50(3)(bc), 948.02(2).[1] On December 8, 1998, Hampton entered an *Alford* plea to that charge.[2]

¶ 7. Prior to the plea hearing, Hampton's attorney negotiated a plea agreement with the State. He also met with the defendant to review a two-page plea questionnaire.

¶ 8. Item 10 of the plea questionnaire read: "I understand that the Judge is not bound to follow any plea agreement or any recommendation made by the District Attorney, my attorney, or any presentence report. I understand that the Judge is free to sentence me to the . . . maximum possible penalties in this case." Immediately below this language the questionnaire listed the charge against Hampton and noted, "Years: 20" and "Fine: $10,000."

¶ 9. Item 15 of the questionnaire stated: "I have read (or have had read to me) this entire questionnaire, and I understand its contents." Below this statement, Hampton signed his name and wrote in the date. Hampton's attorney also signed the questionnaire, attesting that "the defendant acknowledged his understanding of each item in this questionnaire."

¶ 10. The questionnaire was dated December 6, 1998. Two days later, at the plea hearing, Hampton acknowledged that his counsel had read the information in the plea questionnaire to him and that Hampton had signed both sides of the form.

¶ 11. The plea hearing on December 8 generated a 28–page transcript, with a lengthy plea colloquy, which the court of appeals later described as "exemplary . . . with one exception." *Hampton*, 259 Wis. 2d 455, ¶ 7.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

[2] *See North Carolina v. Alford*, 400 U.S. 25 (1970).

¶ 12.　Circuit Judge Mel Flanagan elicited information about the defendant's age, his six years of post-high school education, his history of mental problems and voluntary commitments, his medications, the offense, the victim, and potential charges outside the county. The court also asked questions about the appropriate plea. Because the court had received a letter from Hampton in which he denied an element of the offense, the court questioned whether Hampton truly wished to enter a no-contest plea. The court asked defense counsel to take a moment to discuss with Hampton whether he wanted to enter an *Alford* plea instead. After a discussion with the defendant off the record, defense counsel informed the court that Hampton wanted to enter an *Alford* plea.

¶ 13.　The court also engaged in extensive discussion of a plea agreement in which the State offered the defendant an option on the State's sentencing recommendation. In essence, the State offered the defendant a choice between a recommendation to the court of a seven-year prison sentence stayed, with seven years of probation and nine to twelve months in the House of Correction as a condition of probation; *or* a recommendation to the court of an imposed and stayed sentence of incarceration and probation with a period of time in the House of Correction, leaving the length of all terms to the court's discretion. By asking probing questions, the court clarified the plea agreement. In the discussion, the district attorney corrected his description of the agreement, and defense counsel explained to the defendant: "[The district attorney's] recommendation on the second [option] is just to stand silent as to how long you're in jail or a prison, leaving that all to the judge. He would just stand silent as to the amount . . . . In either

case, we're free to argue for less. Do you understand that now?" Hampton answered, "Yes."

¶ 14. In the colloquy, the court addressed both the maximum penalty for the offense and the defendant's understanding of the terms of the plea agreement:

| | |
|---|---|
| The Court: | [The State has] agreed to the two possible recommendations at sentencing that they have offered to you; do you understand that? |
| The Defendant: | Yes. |
| The Court: | And you understand that the offense for which you are charged at this time carries a penalty of up to twenty years in prison; do you understand that? |
| The Defendant: | Now I do. |
| The Court: | Okay. Is that news to you? |
| The Defendant: | I thought it was forty years, Your Honor. |
| The Court: | Am I wrong? |
| The Prosecutor: | No. It's a — It's a second degree. |
| The Court: | One count — |
| The Prosecutor: | Correct — |
| The Court: | — so it's a — |
| The Prosecutor: | — twenty year — |
| The Court: | — twenty year penalty. Okay now do you understand that? |

The Defendant: Yes.

The Court: Okay. Now, you understand that their recommendation of either making an affirmative recommendation of seven years imposed and stayed and seven-year probation or leaving it up to the Court to determine what the imposed and stayed sentence is and what the probation is are both far less than the maximum that they could recommend; do you understand that?

The Defendant: Yes, I do.

The Court: Okay. So do you understand that you are receiving a benefit from them in the fact that they would not charge any other charges and make one of those two recommendations at sentencing?

The Defendant: Yes, I do.

. . . .

The Court: Other than what the State has agreed to recommend, the two possible recommendations, have you been promised anything else?

The Defendant: No.

. . . .

The Court: Do you understand that this offense [second-degree sexual assault of a child] is — you can face a possible fine of up to $10,000 or imprisonment for not more than twenty years or both; do you understand that?

The Defendant: Yes.

The Court: And you understand that the State has agreed to recommend an imposed and stayed sentence of seven years in jail with a seven-year probation with appropriate conditions to include a nine- to twelve-month period in the House of Correction or a period of imposed and stayed sentence and probation with the same conditions, but the length of those sentences would be up to the Court; do you understand that?

The Defendant: Yes.

The Court: Do you have any question about their recommendation or anything we've discussed so far?

The Defendant: No.

¶ 15. The court engaged in extensive discussion with the defendant. At no point, however, did the circuit court personally advise the defendant that it was not bound by the plea agreement, or ask the defendant whether he understood that the court was not bound by the plea agreement. The State does not contend that the court's statements about "leaving it up to the Court to determine what the imposed and stayed sentence is" or "the length of those sentences would be up to the Court" were anything more than summaries of part of the State's second possible sentencing recommendation.

¶ 16. On March 8, 1999, honoring the defendant's choice under the plea agreement, the State recommended a seven-year imposed and stayed sentence and seven years probation with a condition that Hampton serve a nine- to twelve-month jail term.

¶ 17. The court placed Hampton on probation and ordered a twelve-month jail term but rejected the remainder of the recommendation. Rejecting a seven-year imposed and stayed prison term with seven years of probation, the circuit court imposed and stayed a twelve-year prison term with twelve years of probation.

¶ 18. Hampton filed a postconviction motion[3] requesting an evidentiary hearing at which he intended to demonstrate that his plea should be withdrawn because it was not knowingly and voluntarily made. He alleged that the circuit court failed to personally advise him that it was not bound to follow the sentencing recommendation of the plea agreement and that he did not understand that the court was not bound by the prosecutor's recommendation. The circuit court denied the motion without an evidentiary hearing and Hampton appealed.

¶ 19. A divided court of appeals reversed, concluding that Hampton made a *prima facie* showing under *Bangert,* inasmuch as (1) the circuit court that accepted the plea failed to personally advise Hampton that it was not bound by the State's sentence recommendation; and (2) Hampton alleged that he was actually unaware that the court was not bound by the recommendation. *Hampton,* 259 Wis. 2d 455, ¶ 17. The court concluded

---

[3] Hampton in fact filed two postconviction motions. The first, heard by Circuit Judge Mel Flanagan, was rejected without an evidentiary hearing. Hampton filed an appeal which he then voluntarily dismissed. He subsequently filed a second postconviction motion to withdraw his plea, which was assigned to Circuit Judge Dennis Moroney. This motion was also denied without an evidentiary hearing. Both judges filed written explanations of their decisions. Judge Moroney's order denying Hampton's motion for postconviction relief superseded Judge Flanagan's order. We therefore discuss the issues as they relate to the second order.

that the circuit court erred in denying Hampton's postconviction motion to withdraw his plea without conducting an evidentiary hearing. *Id.,* ¶ 18.

## II. CIRCUIT COURT'S OBLIGATION TO ADVISE THE DEFENDANT PERSONALLY THAT THE COURT IS NOT BOUND BY THE PLEA AGREEMENT

¶ 20. The first issue is whether, in taking a plea of guilty or no contest from a criminal defendant, the circuit court must advise the defendant personally on the record that the court is not bound by any plea agreement and ascertain whether the defendant understands the information. We conclude that the answer is "yes."

¶ 21. Taking pleas is an increasingly important and complex stage in a criminal proceeding and is the source of frequent litigation. The paramount principle at a plea hearing is that "a guilty or no contest [or *Alford*] plea must be knowingly, voluntarily, and intelligently entered." *State v. Bollig,* 2000 WI 6, ¶ 15, 232 Wis. 2d 561, 605 N.W.2d 199 (citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)); *Bangert,* 131 Wis. 2d at 257.

¶ 22. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction." *Boykin,* 395 U.S. at 242. When a defendant pleads guilty or no contest, he or she waives several constitutional rights, including the privilege against self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *Id.* at 243. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done

with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970). Courts are required to notify defendants of the direct consequences of their pleas. *State ex rel. Warren v. Schwarz,* 219 Wis. 2d 615, 636, 579 N.W.2d 698 (1998) (citing *Brady,* 397 U.S. at 755).

¶ 23. The constitutional mandate set out in *Bollig* and *Boykin* is enforced and supplemented by Wis. Stat. § 971.08(1)(a), (b), and (c);[4] and by a series of decisions including *State ex rel. Burnett v. Burke,* 22 Wis. 2d 486, 494, 126 N.W.2d 91 (1964), *Ernst v. State,* 43 Wis. 2d 661, 674, 170 N.W.2d 713 (1969), and *Bangert,* 131 Wis. 2d at 261–62, which established six "general duties" of the trial court in accepting a plea, namely:

(1) To determine the extent of the defendant's education and general comprehension;

(2) To establish the accused's understanding of the nature of the crime with which [the defendant] is charged and the range of punishments which it carries;

[4] Wisconsin Stat. § 971.08 (2001–02) provides in part:

971.08 Pleas of guilty and no contest; withdrawal thereof. (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:

(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.

(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

(c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law.

(3) To ascertain whether any promises or threats have been made to [the defendant] in connection with [the defendant's] appearance, [the defendant's] refusal of counsel, and [the defendant's] proposed plea of guilty [or no contest];

(4) To alert the accused to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to a layman such as the accused;

(5) To make sure that the defendant understands that if [the defendant is] a pauper, counsel will be provided at no expense to [the defendant]; and

(6) To personally ascertain whether a factual basis exists to support the plea.

*Bangert,* 131 Wis. 2d at 261–62 (citations omitted).

¶ 24. *Bangert* added a seventh duty: (7) To inform the defendant of the constitutional rights that are waived by a plea, or determine whether the defendant already possesses this knowledge, and then ascertain whether the defendant understands that he is giving up these rights by entering a plea. *Id.* at 270–72. The court stated that: "The defendant need not specifically waive each right, but the record or other evidence must show that he entered his plea voluntarily and knowingly with understanding of the rights he was waiving." *Id.* at 270.

¶ 25. The appearance of *Bangert's* seventh duty has led to plea questionnaires that set out a defendant's constitutional rights in detail and provide a place on the form where the defendant acknowledges that these rights are being waived. The court then follows up on the record. This was illustrated in *State v. Trochinski,* 2002 WI 56, ¶ 11 n.6, 253 Wis. 2d 38, 644 N.W.2d 891, with the following language:

The Court: Now, I'm not going to go over all of the

things on the form with you. . . . I do want to touch bases though with certain constitutional rights.

. . . .

The Court: Now, if you enter a no contest plea, then you will be waiving and giving up your right to remain silent, your right to testify, your right to a 12 person jury trial, your right to have a unanimous verdict, your right to confront your accuser in court, cross-examine that person under oath, right to call witnesses on your own behalf, and the right to [proof] beyond a reasonable doubt [of] each element of the offense to which you are charged. You understand that that would be the case?

The Defendant: Yes, I do.

¶ 26. The practice of plea-bargaining is an essential component of the administration of criminal justice. *Santobello v. New York,* 404 U.S. 257, 260 (1971). "[W]hatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." *Bordenkircher v. Hayes,* 434 U.S. 357, 361–62 (1978) (quoting *Blackledge v. Allison,* 431 U.S. 63, 71 (1977)); *see also White,* 57 Wis. 2d at 21 ("Plea bargaining is an accepted and necessary part of the process whereby a good many criminal prosecutions are terminated as a result of a guilty plea.").

¶ 27. In Wisconsin, circuit judges do not involve themselves in plea bargaining. *State v. Erickson,* 53 Wis. 2d 474, 481, 192 N.W.2d 872 (1972); *Rahhal v. State,* 52 Wis. 2d 144, 150, 187 N.W.2d 800 (1971); *State*

*v. Wolfe,* 46 Wis. 2d 478, 487, 175 N.W.2d 216 (1970). In *Farrar v. State,* 52 Wis. 2d 651, 657, 191 N.W.2d 214 (1971), this court declared that "any advance understanding between a prosecutor and defendant must not involve the trial judge."

¶ 28. In *White,* the court embraced the corollary to the *Farrer* principle, namely: "If the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, *the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court.*" 57 Wis. 2d at 24 (quoting American Bar Association, *Standards Relating to Pleas of Guilty,* Approved Draft, § 1.5 at 29 (1968)) (emphasis added).

¶ 29. Curiously, this important mandate was not listed among the "duties" outlined in *Bangert.*

¶ 30. In *White,* a defendant pleaded guilty to burglary pursuant to a plea agreement. The agreement provided for the dismissal of a similar charge against the defendant's brother. *White,* 57 Wis. 2d at 20. The details of the plea agreement were not disclosed to the court at the plea hearing. This court stated that the terms of any plea agreement should be made a matter of record at the plea hearing, *id.* at 22 (citing *Austin v. State,* 49 Wis. 2d 727, 183 N.W.2d 56 (1971)), to assist review of such issues as whether a plea agreement was proper, whether a plea agreement was kept, and whether the resulting plea was voluntary. To ensure compliance, we emphasized that "the standards specified in sec. 1.5 of the ABA *Standards Relating to Pleas of Guilty must be observed* with respect to ascertaining whether a plea agreement has been reached prior to the plea discussion and the terms of the agreement that has been reached." *Id.* at 24 (emphasis added).

¶ 31. Section 1.5 of the ABA Standards provided that a court should not accept a plea of guilty or no contest unless it determines "whether the tendered plea is the result of prior plea discussions and a plea agreement." *Id.* This is consistent with the third enumerated *Bangert* requirement noted above, that a court must "ascertain whether any promises . . . have been made to [the defendant] in connection with [the defendant's] . . . proposed plea of guilty." *Bangert,* 131 Wis. 2d at 262.

██

¶ 32. Furthermore, when the court becomes aware that the guilty or no contest plea is the result of a plea agreement, it must inquire as to the terms of the agreement. If the court discovers that "the prosecuting attorney has agreed to seek charge or sentence concessions which must be approved by the court, *the court must advise the defendant personally that the recommendations of the prosecuting attorney are not binding on the court." White,* 57 Wis. 2d at 24 (quoting American Bar Association, *Standards Relating to Pleas of Guilty,* Approved Draft, § 1.5 at 29 n.6 (1968)) (emphasis added).[5]

---

[5] The State argues that "a court is not even obligated to inquire whether such [a plea agreement] exists," and therefore a court "should not be charged with the duty to inform the defendant it is not bound by the negotiated plea agreement." In *State v. Lee,* the case the State cites for this proposition, we indeed "decline[d] to make it mandatory that, upon a plea of guilty or no contest, a court specifically ask whether there have been any plea negotiations or agreements or whether the state has promised to make any recommendations." 88 Wis. 2d 239, 251, 276 N.W.2d 268 (1979). However, our holding did not obviate a court's duty to inquire "whether any promises or threats have been made . . . in connection with the proposed plea." *Id.* In *Lee,* the court complied with the holdings of this

¶ 33. *White's* mandate that the court advise the defendant that the prosecutor's recommendation is not binding on the court has been repeated by this court at least twice.[6] In *State v. McQuay,* 154 Wis. 2d 116, 452 N.W.2d 377 (1990), we held that the State cannot agree to withhold relevant information in exchange for a plea:

> Agreements by law enforcement officials, whether they be by the police or prosecutors, not to reveal relevant and pertinent information to the trial judge charged with the duty of imposing an appropriate sentence upon one convicted of a criminal offense, are clearly against public policy and cannot be respected by the courts.

*Id.* at 125–26 (quoting *Grant v. State,* 73 Wis. 2d 441, 448, 243 N.W.2d 186 (1976)). We concluded that the agreement at issue did not violate public policy because a sentencing court is not bound by the terms of the plea

---

court when it inquired whether there had been any promises made by the prosecution; the defendant, however, answered in the negative despite the fact that the prosecutor had agreed to recommend a reduced sentence. *Id.* at 242. The court in that instance could not have been expected to follow up with questions regarding the terms of a plea agreement that it was told did not exist, and it would have required superior powers of prognostication for the court to have advised the defendant that it was not bound by a plea agreement of which it had no knowledge.

It should also be noted that the *Lee* case was decided in 1979, more than seven years before *State v. Bangert,* 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

[6] We have also reiterated that the court is to abide by the standards of § 1.5 of the ABA Standard Relating to Guilty Pleas. *See Melby v. State,* 70 Wis. 2d 368, 385, 234 N.W.2d 634 (1975) (noting that the circuit court must inquire into voluntariness of plea in accordance with American Bar Association, *Standards Relating to Pleas of Guilty,* Approved Draft, § 1.5 cmt. (1968)).

agreement. *Id.* at 128 (citing *Young v. State,* 49 Wis. 2d 361, 367, 182 N.W.2d 262 (1971)). In this context, we explained that when the court must approve charge or sentence concessions, *"the court must personally advise the defendant that the agreement is in no way binding on the court." Id.* (emphasis added).

¶ 34. In *State v. Comstock,* 168 Wis. 2d 915, 920–21, 485 N.W.2d 354 (1992), we addressed whether double jeopardy permits a circuit court to vacate *sua sponte* a previously accepted no contest plea in order to reinstate previously charged felonies. Answering in the negative, our analysis reiterated crucial components of the legal framework of plea agreements. *Id.* at 927 n.11. Central to our discussion was the notion that the circuit court, before accepting a plea agreement, had considerable leeway to probe into the reasons why concessions were appropriate. *Id.* at 927. We set forth that:

> A circuit court has the power to accept or reject a plea agreement reducing or amending charges; it should consider the public interest in making its decision about the plea agreement and should make a complete record of the plea agreement. *The court must personally advise the defendant that the agreement is in no way binding on the court.*

*Id.* at 927–28 n.11 (citing *White,* 57 Wis. 2d at 29–30) (emphasis added).

¶ 35. The State argues that our statements in *White, McQuay,* and *Comstock,* which unambiguously require circuit courts to advise defendants entering pleas that the court is not bound by a plea agreement, were insufficiently germane to the issues addressed in those cases to merit precedential value. According to the State, these statements were dicta because they were not necessary to disposition, and we did not intentionally take up or decide whether a court must

advise a defendant personally that the plea agreement is not binding on the court.

¶ 36. We disagree, at least insofar as *White* is concerned. In *White,* this court clearly focused its attention on the procedures a court should follow when determining whether a plea, especially one that results from a plea agreement, is voluntary. This court directed that the standards proposed by § 1.5 of the ABA Standards "must be observed," exemplifying "a judicial act of the court" that should thereafter be recognized as a binding decision of the court. *See State v. Kruse,* 101 Wis. 2d 387, 392, 305 N.W.2d 85 (1981).

¶ 37. Perhaps even more telling is the case of *State v. Williams,* 2000 WI 78, 236 Wis. 2d 293, 613 N.W.2d 132. In *Williams,* this court was asked to adopt a new rule of procedure requiring a trial judge who anticipated exceeding the state's sentencing recommendation under a plea agreement, to inform the defendant of the judge's anticipated action and to allow the defendant to withdraw his plea. This court rejected the proposed rule saying:

> In Wisconsin, a trial court is not bound by the state's sentence recommendation under a plea agreement. *Before entering a plea, the defendant is informed of and understands that the sentence recommendation he or she has bargained for is not binding on the court.* Under this procedure, "failure to receive sentence concessions contemplated by a plea agreement is [not] a basis for withdrawing a guilty plea on the grounds of manifest injustice." *Melby v. State,* 70 Wis. 2d 368, 385, 234 N.W.2d 634 (1975).

*Id.,* ¶ 2 (citation omitted) (emphasis added). With this analysis, the *Williams* court not only restated a well established rule but also used that rule as justification for preserving our current plea taking procedure. Aban-

doning the *White/McQuay/Comstock* mandate in this case would destroy the foundation of our *Williams* decision.

¶ 38. Consequently, we reaffirm the rule that a circuit court must advise the defendant personally that the terms of a plea agreement, including a prosecutor's recommendations, are not binding on the court and, concomitantly, ascertain whether the defendant understands this information.

¶ 39. This holding presents a second issue: What is the appropriate way for a circuit court to advise the defendant personally that the terms of a plea agreement are not binding on the court?

¶ 40. The State raises concerns. It notes that in *White,* the mandate is stated that: "[T]he court must advise the defendant *personally* that the recommendations of the prosecuting attorney are not binding on the court." Then it observes that *McQuay* and *Comstock* restated the mandate as: "The court must *personally* advise the defendant that the agreement is in no way binding on the court."

¶ 41. What does the word "personally" modify, and what does it mean? Does the mandate require that the circuit judge personally recite the substance of the admonition that the plea agreement is not binding on the court? Is there a set script, similar to the script in Wis. Stat. § 971.08(1)(c), that the court must follow? May the court ascertain a defendant's knowledge of the court's freedom to disregard the plea agreement through a combination of questions and reference to the plea questionnaire or some prior communication?

¶ 42. The essence of the mandate is that the court must engage in a colloquy with the defendant on the record at the plea hearing to ascertain whether the defendant understands that the court is not bound by a

sentencing recommendation from the prosecutor or any other term of the defendant's plea agreement. The plea colloquy is defective if it fails to produce an exchange on the record that indicates that the defendant understands the court is free to disregard recommendations based on a plea agreement for sentencing.

¶ 43. The court's duty is to assure that the defendant has enough information and understanding of the court's independent role in sentencing, notwithstanding any plea agreement, that the defendant is able to enter a knowing, voluntary, and intelligent plea. This duty does not require that the court provide *all* the essential information *personally,* although personal explanation by the court strikes us as the most logical, consistent, and efficient way of delivering information. Nor does it require magic words or an inflexible script. In every case, however, the court must make personal inquiry of the defendant to determine whether the defendant understands that the court is not bound by the terms of the plea agreement.

¶ 44. In a legal sense, the purpose of the colloquy is to assure a voluntary and intelligent plea, as well as fundamental fairness in the taking of pleas. In a practical sense, the purpose of the colloquy is to promote finality by eliminating one of the grounds for plea withdrawal. As we have done in the past, we strongly encourage courts to follow the approved plea acceptance procedures as set forth in Wis JI-Criminal SM-32 (1995). *See Bangert,* 131 Wis. 2d at 272; *State v. Minniecheske,* 127 Wis. 2d 234, 245–46, 378 N.W.2d 283 (1985); *State v. Bartelt,* 112 Wis. 2d 467, 483–84 n.3, 334 N.W.2d 91 (1983). We also encourage that these procedures be updated periodically to reflect recent developments in case law.

## III. REMEDY FOR COURT'S FAILURE TO PERSONALLY ADVISE THE DEFENDANT THAT THE COURT IS NOT BOUND BY THE PLEA AGREEMENT

¶ 45. In *Bangert,* we adopted "a new remedy for *prima facie* violations of statutorily and judicially mandated plea hearing procedures." 131 Wis. 2d at 252. In light of then-contemporary United States Supreme Court jurisprudence, we retreated from our earlier announcement that "the Federal Constitution" required that a circuit court ascertain the defendant's understanding of the nature of the charge from the record at the plea hearing. *Id.* at 256–57. The judicial duties that we had earlier announced remained, but a new remedy was devised for violations of these duties in light of their non-constitutional underpinnings.

¶ 46. *Bangert* provides that a defendant may move to withdraw his plea when the procedures outlined in Wis. Stat. § 971.08 are not undertaken or other court-mandated duties at the plea hearing are not fulfilled. The initial burden rests with the defendant to make a pointed showing that the plea was accepted without the trial court's conformity with § 971.08 or other mandatory procedures. *Bangert,* 131 Wis. 2d at 274. When the defendant's motion shows a violation of § 971.08(1)(a) or (b)[7] or other mandatory duties *and* alleges that he in fact did not know or understand the information which should have been provided at the plea hearing, the burden shifts to the state to show by clear and convincing evidence that the defendant's plea

---

[7] For a discussion of plea withdrawal when a court fails to comply with the procedures of Wis. Stat. § 971.08(1)(c), see *State v. Douangmala,* 2002 WI 62, 253 Wis. 2d 173, 646 N.W.2d 1.

was knowingly, voluntarily, and intelligently entered. Under these circumstances, the circuit court must hold an evidentiary hearing at which the State and the defendant can offer evidence as to whether the defendant in fact knew the information that should have been provided. *Id.* at 274–75.

¶ 47. To obtain an evidentiary hearing based upon defects in the plea colloquy, the defendant will rely on the plea hearing record. To rebut the defendant's motion to withdraw his plea because the plea was allegedly not knowing, voluntary, and intelligent, the state will likely rely on the totality of the evidence, much of which will be found outside the plea hearing record. *Id.* at 275.

¶ 48. *Bangert* applied its new remedy to violations of § 971.08 and the other "duties" outlined in the opinion. As noted, *Bangert* did not include the mandate set out in *White.* Nonetheless, we approve the use of the *Bangert* remedy for plea colloquies that are defective because of the failure of the court to advise the defendant personally that the terms of the plea agreement are not binding on the court and to ascertain that the defendant understands this information.

¶ 49. *Bangert* spoke to a circuit court's obligations with regard to all guilty and no contest pleas, while the *White* mandate applies only to that subset of pleas in which the court determines there has been a plea agreement. The *Bangert* remedy has proven to be a useful tool in enforcing a defendant's rights at plea hearings, and we see no reason not to apply it in the *White* context.

## IV. ESTABLISHING THE REQUISITE SHOWING UNDER *BANGERT*

█

¶ 50. The third issue concerns a defendant's burden to make a showing that will require the court to conduct an evidentiary hearing on the defendant's motion to withdraw his plea. Is the circuit court required to conduct an evidentiary hearing on a defendant's motion to withdraw his plea when the motion points to the court's failure in the plea colloquy to advise the defendant personally that the court was not bound by the plea agreement, and the defendant also alleges that he did not understand the court was not bound by the plea agreement? We conclude the answer is "yes."

¶ 51. The State asserts that Hampton should not be entitled to an evidentiary hearing despite the circuit court's failure to advise him personally that the court was not bound by the plea agreement, because his motion did not contain sufficient evidentiary facts, which, if true, would have entitled him to withdraw his plea. The State relies on a line of cases highlighted by *State v. Bentley,* 201 Wis. 2d 303, 548 N.W.2d 50 (1996); *see also Levesque v. State,* 63 Wis. 2d 412, 217 N.W.2d 317 (1974); *Nelson v. State,* 54 Wis. 2d 489, 195 N.W.2d 629 (1972). However, *Bangert* controls the facts of this case because *Bangert*-type cases are confined to alleged defects in the record of the plea colloquy. *Bentley* is inapposite because it applies to allegations less susceptible to objective confirmation in the record.

¶ 52. We begin our discussion with *Nelson,* 54 Wis. 2d 489, and *Levesque,* 63 Wis. 2d 412, two cases that serve as the foundation for *Bentley.* In *Nelson,* the defendant was denied an evidentiary hearing to with-

draw his guilty plea after alleging that his "plea was not made voluntarily after proper advice from counsel and with a full understanding of the consequences of said plea but rather it was obtained unfairly to the ignorance and fear of said affiant." 54 Wis. 2d at 493. On appeal, the defendant argued that the court is obligated to hold a hearing whenever a non-frivolous motion to withdraw or vacate a plea is filed. *Id.* at 495. We rejected that argument, and concluded instead that after the plea is entered, "it is within the discretion of the trial court whether or not to grant a hearing on the motion." *Id.* at 496. We went on to hold that:

> [when] a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing. However, [1] if the defendant fails to allege sufficient facts in his motion to raise a question of fact, or [2] presents only conclusionary allegations, or [3] if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing.

*Id.* at 497–98.

¶ 53. Two years later, the defendant in *Levesque* also sought to withdraw his guilty plea because, first, the facts allegedly did not support the defendant's guilt, and, second, because the court allegedly did not ascertain that the defendant understood the nature of the charged offense. According to the defendant, both deficiencies were a result of the court's misconstruction of the elements of burglary. 63 Wis. 2d at 418. We first concluded that the court correctly interpreted the elements of burglary. *Id.* at 415, 418. We then turned our attention to the defendant's claim that, at the time of the plea hearing, he was unable to understand the

proceedings due to mental disease or defect. Relying on *Nelson,* we reasoned that "the [defendant] cannot stand on conclusory allegations, hoping to supplement them at a hearing." *Id.* at 421. Because the defendant failed to allege more than ultimate facts, we held that the circuit court properly denied the defendant an evidentiary hearing. *Id.* at 421–22.

¶ 54. The State's assertion that courts are not required to hold an evidentiary hearing when a defendant merely alleges that he or she does not understand important information when entering a plea might be dismissed if it relied solely on these two cases. Both *Nelson* and *Levesque* are distinguishable on the basis that they predate the advent of the burden-shifting framework announced in *Bangert.* However, this court relied on both *Nelson* and *Levesque* in *Bentley* when it rejected a defendant's argument that he was entitled to an evidentiary hearing based on a claim of ineffective assistance of counsel. *Bentley,* 201 Wis. 2d at 306. Consequently, additional analysis is required.

¶ 55. In *Bentley,* the defendant moved to withdraw his guilty plea on grounds that his attorney erroneously advised him about the minimum eligibility date for parole. *Id.* at 307. In assessing the viability of the defendant's claim, we employed the test from *Nelson* in order to determine whether the court was required to hold a hearing on the plea withdrawal motion. *Id.* at 309. We interpreted *Nelson* to provide "a two-part test which necessitates a mixed standard of appellate review." *Id.* at 310. "If the motion on its face alleges facts which would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing." *Id.* (citing *Nelson,* 54 Wis. 2d at 497). "However, if the motion fails to allege sufficient facts, the circuit court has the discretion to deny a

405

postconviction motion without a hearing based on any one of the three factors enumerated in *Nelson.*" *Id.* at 310–11; *see also Nelson,* 54 Wis. 2d at 497–98; ¶ 52, *supra.*

¶ 56. We conclude that *Bangert* and *Bentley,* although different, are not inconsistent. They are not inconsistent because they apply to different fact situations. Both cases deal with a defendant's motion to withdraw a plea. Both deal with requests for an evidentiary hearing. Both assign to the defendant the burden of making a showing that an evidentiary hearing is required.

¶ 57. We see several distinctions in the *Bangert*-type case. First, the defendant must point to a specific defect in the plea hearing which constitutes an error by the court. The defendant will not satisfy this burden merely by alleging that "the plea colloquy was defective" or "the court failed to conform to its mandatory duties during the plea colloquy." The defendant must make specific allegations such as "at no point during the plea colloquy did the court explain that it was not bound by the plea bargain and was free to disregard the prosecutor's sentencing recommendation." In addition, the defendant must allege that he did not in fact understand that the court was not bound by the plea agreement because that information/explanation was not provided. We think a motion of this nature passes the test of *Nelson* and *Bentley:* a motion to withdraw a plea that alleges *facts* which, if true, would entitle the defendant to relief. The allegation that the defendant did not understand is, admittedly, conclusory; but the allegation raises a question of *fact* and perhaps law that requires resolution.

¶ 58. The allegation that a defendant did not understand something is qualitatively different from

the allegation of a legal conclusion such as "counsel's performance was deficient and resulted in prejudice to the defendant," or "the defendant's plea was not voluntary." These *legal* conclusions cry out for supporting facts, and these supporting facts must be alleged to satisfy the defendant's burden for an evidentiary hearing.

¶ 59. "The nature and specificity of the required supporting facts will necessarily differ from case to case." *Bentley,* 201 Wis. 2d at 314. For instance, in the case of a *White* violation, it is relatively easy to point to the discussion of the plea agreement in the plea hearing transcript and show that there was no reference to the fact that the court is not bound by the terms of the plea agreement. It would be considerably more difficult to expand on an allegation that the defendant did not understand information that was not conveyed to him.

¶ 60. By contrast, the *Bentley* court explained that normally a defendant is entitled to withdraw a guilty plea after sentencing only upon a showing of "manifest injustice by clear and convincing evidence." *Bentley,* 201 Wis. 2d at 311. When, for example, the basis for this injustice is an allegation that defendant involuntarily entered a plea because of the ineffective assistance of counsel, his claim raises questions about both deficient performance and prejudice. *Id.* at 311–12. To establish deficient performance, a defendant must necessarily provide the factual basis for the court to make a legal determination. To show prejudice, a defendant must do more than merely allege that he would have pleaded differently but for the alleged deficient performance. He must support that allegation with "objective factual assertions." *Id.* at 313.

¶ 61. *Bangert*-type violations should be apparent from the record. *Bentley*-type allegations will often

407

depend on facts outside the record. To ask the court to examine facts outside the record in an evidentiary hearing requires a particularized motion with sufficient supporting facts to warrant the undertaking.

¶ 62. There is a second distinction between *Bangert*-type cases and *Bentley*-type cases. In *Bangert*-type cases, the defendant has the initial burden of showing the basis for a hearing; but if he succeeds, the burden shifts to the state to show by clear and convincing evidence that the defendant's plea was knowingly, voluntarily, and intelligently entered. *Bangert,* 131 Wis. 2d at 274.

¶ 63. In *Bentley*-type cases, the defendant has the burden of making a *prima facie* case for an evidentiary hearing, and if he succeeds, he still has the burden of proving all the elements of the alleged error, such as deficient performance and prejudice. The defendant must prove the linkage between his plea and the purported defect. The defendant's proof must add up to manifest injustice.

¶ 64. Consequently, the requisite specificity required for establishing a *prima facie* case mirrors the defendant's ultimate burden of proof. It also reflects the substantive basis for this court's shift of the burden of proof.

¶ 65. Finally, if the *Bangert*-type case requires something less to support the defendant's allegation of his understanding at the time of plea, it must be remembered that the court can head off the problem with a sufficient plea colloquy. For instance, the best defense against an allegation that the defendant did not understand the court's role in sentencing in the wake of a plea agreement, is an explicit colloquy in the transcript of the plea hearing establishing that the defendant understood the court was not bound by the terms

of the plea agreement. In sum, the court has the means to virtually eliminate this ground for plea withdrawal. Requiring an evidentiary hearing in the face of a supported allegation that the plea colloquy was defective is an effective means of enforcing the court's plea taking obligations.

## V. APPLICATION

¶ 66. We now turn our attention to applying the above principles to Hampton's request for an evidentiary hearing. It is undisputed that the circuit court did not advise Hampton that it was not bound by the plea agreement by expressly communicating this information to Hampton at the plea hearing. The court never asked Hampton if he understood that the court was not bound by the plea agreement. Thus, the plea colloquy was deficient for failing to comply with the requirements of *White*. Because Hampton also alleged that he did not understand that the court was not bound by the prosecutor's sentence recommendation, he made the requisite showing and is entitled to an evidentiary hearing.

¶ 67. The State contends that the circuit court complied with the requirements set forth in *White* despite the absence of an express statement indicating that the court was not bound by the plea agreement. The State's argument rests on subtle linguistic distinctions, the court's repeated reference to the prosecutor's recommendation of seven years imposed and stayed as only a "recommendation," and the court's repeated recitation of the maximum possible penalty. As we understand the State's position, when we required in *White* that "the court must advise the defendant personally," the word "personally," because of its position

within the sentence, should be read to modify "defendant," not the "court," the inference being that the information should be *received* by the defendant *in person.* The State sees *White* as requiring only that the defendant himself *be advised,* and this was accomplished by the pre-sentence questionnaire and the court's repeated reference to "recommendation."

¶ 68. The State also argues that the word "advise" carries the generally accepted meaning "to inform," which requires only that the judge make sure a defendant is aware that the court is not bound by the plea agreement. It contends that to repeat information that the court believes the defendant has already heard is not to advise, but to reiterate. Here, the State says, the court asked Hampton whether he had reviewed the plea questionnaire form, and the defendant acknowledged that it had been read to him by his attorney and that he had signed the form. Thus, by the State's analysis, the court ensured that Hampton had been previously given this information, and therefore had ensured that Hampton had been advised.

¶ 69. We reject this argument. The circuit court cannot satisfy its duty by inferring from the plea questionnaire or from something said at the plea hearing or elsewhere that the defendant understands that the court is not bound by the plea agreement. The court must make certain through dialogue that the defendant understands that the court is not bound by other people's promises. The plea questionnaire may be used *to aid the court* (or *the prosecutor or defense counsel*) in explaining, on the record at the plea hearing, the court's role in sentencing. But the court must ask the question that ascertains that the defendant understands what he has been told.

410

¶ 70. Finally, the State relies on the circuit court's repeated use of the word "recommendation" and the reference to the maximum penalty as fulfilling the court's duty to advise the defendant. We agree that a plausible inference may be drawn from the repeated reference to "recommendation" that Hampton understood that the court was not bound by the plea agreement. But contrary inferences may be drawn from other parts of the record. The State is free to present its evidence to meet its burden of persuasion at the evidentiary hearing. In every instance where the requisite showing is made that the defendant was not properly advised at the plea hearing, and the defendant asserts he was unaware that the court could exceed the negotiated sentencing recommendation, there is a genuine issue of material fact which must be resolved at an evidentiary hearing.

¶ 71. We are not persuaded by the State's position that the court fulfilled its duty under *White* in this instance. The requirement that the court advise the defendant that it is not bound by the plea agreement is neither cumbersome nor complicated. As is plain from the burden-shifting remedy created by *Bangert,* we seek to "encourage the prosecution in a plea hearing proceeding to assist the trial court in meeting its . . . obligations." *Bangert,* 131 Wis. 2d at 275. This case likely represents the rare instance where both the court and the prosecution inadvertently overlooked a duty that the court must discharge.

¶ 72. The State has offered several arguments as to why the defendant in fact understood that the court was not bound by the plea agreement. This case, however, is not really about Corey Hampton's understanding at the time of his plea. It is about the circumstances under which a defendant is entitled to an

411

evidentiary hearing when the court errs at a plea hearing. We hold that Hampton is entitled to an evidentiary hearing on his motion. At the hearing the State will have the opportunity to prove that Hampton was aware in fact that the court was not bound by the terms of the plea agreement. We affirm the court of appeals and order that this matter be remanded to the circuit court to conduct an evidentiary hearing in compliance with our decision in *Bangert*.

## VI. CONCLUSION

¶ 73. Today, we reaffirm that where the court is aware of a plea agreement, the court must advise the defendant personally that the court is not bound by the terms of that agreement and ascertain that the defendant understands this information. Further, we hold that the remedial measures specified in *Bangert* apply in this instance. When the defendant shows that the court failed to inform the defendant that it was not bound by the plea agreement, and the defendant alleges that he did not understand that the court was not bound, the defendant is entitled to an evidentiary hearing. In this instance, the circuit court failed to advise Hampton that it was not bound by the plea agreement, and Hampton has alleged that he did not understand this fact; therefore, Hampton is entitled to have an evidentiary hearing on his motion to withdraw the plea. We affirm the decision of the court of appeals, and remand the matter for an evidentiary hearing.

*By the Court.*—The decision of the court of appeals is affirmed, and the cause is remanded to the circuit court for proceedings consistent with this opinion.

¶ 74. PATIENCE D. ROGGENSACK, J., did not participate.

All work on this opinion was completed on or before June 30, 2004. Justice Diane S. Sykes resigned on July 4, 2004.