COURT OF APPEALS
DECISION
DATED AND FILED

October 18, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP878-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CF486**

**IN COURT OF APPEALS
DISTRICT III**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JERAMY GENE BROWN,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Douglas County: KELLY J. THIMM, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Jeramy Gene Brown appeals from a judgment, entered upon his no-contest pleas, convicting him of one count of operating a

motor vehicle while intoxicated (OWI), causing injury, as a third offense, and one count of injury by intoxicated use of a motor vehicle. Brown also appeals from an order denying his motion for postconviction relief seeking to withdraw his pleas. Brown argues that his trial counsel provided him with constitutionally ineffective assistance based on his plea to a WIS. STAT. ch. 940 (2019-20)[1] offense, which rendered him ineligible for earned release through the Wisconsin Substance Abuse Program (SAP). For the reasons that follow, we conclude that Brown has not met his burden to prove that his trial counsel was constitutionally ineffective, and, accordingly, he is not entitled to plea withdrawal on that basis.

## BACKGROUND

¶2 Brown was charged in a six-count[2] Information after a vehicle collision resulting in serious injuries. The criminal complaint alleged that Brown ingested alcohol and then drove to a local restaurant "to pick up pizza." While en route to the restaurant, Brown ran a stop sign and crashed into another vehicle carrying a family of four, causing the family's car to flip and "land[] upside down in the ditch." All four family members sustained injuries, including seatbelt lacerations, broken bones, brain bleeds, and a collapsed lung.

¶3 While investigating the crash, officers gathered information leading them to believe that alcohol was likely a factor in the accident. One of the first responders providing medical assistance to Brown "asked Brown if he 'had any

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Brown was charged with one count of OWI, causing injury, as a third offense; one count of operating with a prohibited alcohol concentration, causing injury, as a third offense; and four counts of injury by intoxicated use of a vehicle.

2

booze on board,'" and Brown responded, "Yea." When asked how much he had to drink, Brown's response was "73 beers." He denied using drugs. Officers also observed an unopened beer can near the vehicle, which first responders stated had been in the vehicle, and "a glass cup with a beer brand label on it in the center console area" that "had a yellow liquid in it which smelled like orange juice."

¶4 Brown was subsequently transported to the hospital for treatment of his injuries. While at the hospital, an officer provided Brown with *Miranda*[3] warnings and read Brown the Informing the Accused Form. The officer again asked Brown about his alcohol consumption. Brown stated that he had "'[a] few screwdrivers' (vodka & orange juice)." When the officer asked Brown how much he had to drink, he responded, "Probably too much." Brown consented to a blood draw, which revealed a blood alcohol concentration (BAC) of .210.

¶5 Brown pled no contest to two of the six counts charged in the Information: OWI, causing injury, as a third offense, in violation of WIS. STAT. § 346.63(2)(a)1. (Count 1); and injury by intoxicated use of a vehicle in violation of WIS. STAT. § 940.25(1) (Count 3). The remaining four counts were dismissed outright. The circuit court ordered a presentence investigation report (PSI), which was filed with the court prior to sentencing.

¶6 At sentencing, Brown's struggles with alcohol abuse were highlighted by both the State and his trial counsel. The State explained that "alcohol has been a factor" throughout Brown's criminal history. Despite this history, Brown "made no efforts to receive treatment [for substance abuse] in the

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

community since the offense"; thus, the State argued that "it is absolutely imperative that a confinement setting is necessary" for Brown to receive treatment. The State recommended a prison sentence in conjunction with a significant period of extended supervision. Brown's trial counsel acknowledged that Brown has "an alcohol problem," but counsel highlighted the mitigating factors in Brown's favor and argued that probation was appropriate under the circumstances.

¶7   After reviewing the appropriate factors under *State v. Gallion*, 2004 WI 42, ¶¶39-44, 270 Wis. 2d 535, 678 N.W.2d 197, the circuit court determined that a prison sentence was necessary. The court explained that Brown had not "learn[ed] from his mistakes," and "confinement is necessary" so Brown can receive the treatment he needs. On Count 1, the court sentenced Brown to five years, comprised of two years' initial confinement followed by three years' extended supervision. On Count 3, the court imposed a consecutive nine-year sentence, consisting of four years' initial confinement followed by five years' extended supervision.

¶8   The circuit court then inquired about Brown's eligibility for SAP.[4] The State noted that Brown was eligible on Count 1 but not on Count 3 because that conviction "is a [WIS. STAT. ch.] 940 offense." Brown's trial counsel agreed but with qualifications, stating, "I'd have to check the statute again. That sounds right, but I would hesitate to say yes, because I haven't looked at it in a while."

---

[4] SAP, formerly the Earned Release Program, *see* 2011 Wis. Act 38, §19, allows an eligible inmate the opportunity to obtain early release from the initial confinement portion of his or her sentences if the inmate completes the program to the Department of Corrections' (DOC) satisfaction. WIS. STAT. § 302.05(3). After completing the program, the defendant's remaining period of initial confinement is converted to extended supervision. Sec. 302.05(3)(c)2.; *State v. Owens*, 2006 WI App 75, ¶5, 291 Wis. 2d 229, 713 N.W.2d 187.

After consulting the statute, counsel agreed that Brown was not eligible for SAP on Count 3. The court also questioned the PSI author, who concurred.[5] The PSI author did, however, inform the court that because the sentences are to run consecutively, "if [Brown] were to serve [Count 3] first and then serve Count 1 second, he would be eligible [for SAP] on [Count 1]." In response, the court ordered that Brown serve Count 3 before serving Count 1 to have the "potential opportunity to get" SAP while serving the Count 1 sentence.

¶9 Brown filed a postconviction motion seeking plea withdrawal based on ineffective assistance of counsel. Brown argued that his trial counsel "misinformed" him that he was eligible for SAP on Count 3 or, in the alternative, that counsel was ineffective by failing to advise him that he was ineligible for SAP on that count. Brown alleged that had he been advised "that his pleas would render him ineligible for earned release via the SAP, he would not have entered his pleas."

¶10 The circuit court held a ***Machner***[6] hearing on the motion. Brown's trial counsel testified that he could not recall whether he discussed SAP with Brown, and there were no notes in the file regarding SAP discussions. According to counsel, it was his practice to discuss SAP with defendants if "prison was a certainty." Counsel testified, however, that he did not believe that prison was a certainty in this case:

> [I]f I recall correctly, this was not a case that I anticipated or at least would have advised him like, yes, absolutely,

---

[5] The PSI itself has a section entitled, "Statutorily Eligible for Substance Abuse Program," with the "No" box checked.

[6] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

5

you are going to receive prison in this case. This struck me more as a case that at least there was a very strong probability that he would not be receiving prison.

¶11 Brown also testified at the ***Machner*** hearing. According to Brown, he was aware of SAP prior to entering his pleas based on discussions with a friend, who told him, "Make sure you get [SAP]." Brown explained that he "had no idea what that was at the time," but he testified that he did not ask his trial counsel about "programming" until after he entered his pleas. Brown stated that his counsel's response on "programming" was "vague," noting that he "should be eligible" "if [he] actually would go to prison" but it was "[u]p to the Judge." Brown testified that he did not know Count 3 was ineligible for SAP and that if he had known that he was ineligible prior to entering his pleas, he "wouldn't have pled" to that count.

¶12 The circuit court concluded the hearing and allowed the parties to file post-hearing briefs. In Brown's brief, he raised, for the first time, a third ineffective assistance of counsel claim: that once it became clear prior to sentencing that Brown was not eligible for SAP on Count 3, trial counsel had a duty to inform Brown that he could withdraw his pleas under the less exacting "fair and just reason" standard for plea withdrawal.[7]

---

[7] Prior to sentencing, a defendant may "freely" withdraw his or her plea for any "fair and just reason," unless the prosecution would be substantially prejudiced. ***State v. Lopez***, 2014 WI 11, ¶61, 353 Wis. 2d 1, 843 N.W.2d 390 (citation omitted). In contrast, when a motion for plea withdrawal is brought after sentencing, the defendant carries the heavy burden of establishing, by clear and convincing evidence, that plea withdrawal is necessary to correct a manifest injustice. ***State v. Daley***, 2006 WI App 81, ¶14, 292 Wis. 2d 517, 716 N.W.2d 146. Brown's postconviction counsel acknowledged in a letter to the circuit court that this was "an additional argument" that was not previously raised in his postconviction motion.

6

¶13 The circuit court subsequently issued its oral decision denying Brown's motion on all three ineffective assistance of counsel claims. First, the court stated that it found Brown's trial counsel's testimony credible and that it found Brown's testimony incredible. While the court acknowledged that trial counsel could not remember whether he discussed SAP with Brown, it stated that counsel "knows what the standard is" for SAP eligibility; therefore, the court found that counsel gave Brown "no information" on SAP rather than "wrong information," as Brown alleged. Second, the court concluded that SAP is "clearly a collateral consequence"[8] of a plea, as even where a statute does not preclude eligibility, courts and the DOC exercise discretion over eligibility for and administration of SAP. *See* WIS. STAT. §§ 302.05(3)(a), 973.01(3g). Accordingly, trial counsel was not ineffective because he was not required to inform Brown as to his program eligibility.

¶14 Finally, the circuit court concluded that Brown's trial counsel was not ineffective by failing to inform Brown that he could have withdrawn his pleas prior to his sentences being imposed. According to the court, Brown "didn't

---

[8] Our supreme court previously addressed the difference between direct and collateral consequences of a plea:

> Direct consequences are those that have a "definite, immediate, and largely automatic effect on the range of a defendant's punishment." Collateral consequences, on the other hand, "are indirect and do not flow from the conviction"; rather, they "may be contingent on a future proceeding in which a defendant's subsequent behavior affects the determination" or may "rest[] not with the sentencing court, but instead with a different tribunal or government agency."

*State v. LeMere*, 2016 WI 41, ¶31, 368 Wis. 2d 624, 879 N.W.2d 580 (alteration in original; citations omitted).

know, at that point, whether [the court] was going to sentence him to prison or probation." Accordingly, the court was not "satisfied that that was an issue that would have allowed him to withdraw his plea under the fair and just standard." The court did not address prejudice, concluding instead that Brown's trial counsel did not perform deficiently. Brown appeals.

## DISCUSSION

¶15 After sentencing, "a plea will not be disturbed unless the defendant establishes by clear and convincing evidence that failure to withdraw the guilty or no contest plea will result in a manifest injustice." *State v. Taylor*, 2013 WI 34, ¶48, 347 Wis. 2d 30, 829 N.W.2d 482. "One way to demonstrate manifest injustice is to establish that the defendant received ineffective assistance of counsel." *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44.

¶16 To prove ineffective assistance of counsel, the defendant bears the burden to establish: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *State v. Sholar*, 2018 WI 53, ¶32, 381 Wis. 2d 560, 912 N.W.2d 89. "A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one." *State v. Smith*, 2003 WI App 234, ¶15, 268 Wis. 2d 138, 671 N.W.2d 854.

¶17 "To demonstrate deficient performance, the defendant must show that his [or her] counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." *State v. Shata*, 2015 WI 74, ¶56, 364 Wis. 2d 63, 868 N.W.2d 93 (citations omitted). When courts consider ineffective assistance claims, "[j]udicial scrutiny of counsel's performance must be highly deferential" and "counsel is strongly presumed to have rendered adequate assistance." *Strickland v. Washington*, 466 U.S. 668, 689-90 (1984).

¶18    To establish prejudice, "a defendant must show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *State v. Savage*, 2020 WI 93, ¶32, 395 Wis. 2d 1, 951 N.W.2d 838 (citation omitted). "To establish prejudice in the context of a postconviction motion to withdraw a guilty plea based upon ineffective assistance of counsel, the defendant must allege that 'but for the counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." *State v. Burton*, 2013 WI 61, ¶50, 349 Wis. 2d 1, 832 N.W.2d 611 (citation omitted); *see also* **Hill v. Lockhart**, 474 U.S. 52, 59 (1985). However, "a defendant must do more than merely allege that he [or she] would have pleaded differently but for the alleged deficient performance. He [or she] must support that allegation with 'objective factual assertions.'" *State v. Hampton*, 2004 WI 107, ¶60, 274 Wis. 2d 379, 683 N.W.2d 14 (citation omitted).

¶19    Whether a defendant has been denied constitutionally effective assistance of counsel is a mixed question of law and fact. *Savage*, 395 Wis. 2d 1, ¶25. We will not overturn a circuit court's findings of fact unless those findings are clearly erroneous. *Id.* We review de novo whether counsel performed deficiently and, if so, whether counsel's deficient performance was prejudicial to the defense. *Id.*

¶20    On appeal, Brown raises the same three ineffective assistance of counsel claims that he raised before the circuit court: (1) Brown's trial counsel misinformed Brown regarding his SAP eligibility; (2) counsel failed to advise Brown that Count 3 was ineligible for SAP; and (3) counsel failed to inform

Brown that he could have withdrawn his pleas prior to being sentenced.[9]  For the reasons that follow, we affirm the court's conclusion that Brown's trial counsel was not constitutionally ineffective.

¶21     Brown first alleges that he was "affirmatively misled when trial counsel told him after the pleas were entered, but before sentencing, that … he would … be eligible for SAP [on Count 3]."  While we are somewhat confused by Brown's claim that his counsel's misinformation provided after he entered his plea can serve as a basis to withdraw his plea, we conclude, based on the record before us, that Brown has failed to establish that his trial counsel performed deficiently. Brown argues that the circuit court's finding that no discussion regarding SAP took place between Brown and his trial counsel is clearly erroneous as it is "unsupported by facts in the record."  We disagree.

¶22     According to Brown, his trial counsel testified that he did not "have any memory of any discussions with [Brown] about [SAP] after the plea and prior to the sentencing" but that "it's possible it was discussed."  Further, Brown claims that the court "fails to explain why Brown's testimony that such a conversation occurred was not credible, especially when trial counsel concedes it may be true."

¶23     Contrary to Brown's claim, the circuit court did discuss its reasons for finding Brown not credible, explaining that it had "a little bit of concern about"

_____

[9] The State argues on appeal that we are unable to review Brown's argument that his counsel was ineffective for failing to inform Brown that he could withdraw his pleas prior to entering his sentences, as Brown did not raise this issue in his postconviction motion.  In the interests of efficient judicial administration, we choose to address the issue, however, as it was raised in postconviction briefing, the State had the opportunity to respond to Brown's argument at that time, and the circuit court addressed the issue in its decision on Brown's postconviction motion.

Brown as it is "clear" based on "the file in its entirety, letters and things being sent to [the court]" that he "is grasping at straws to be released now that he's incarcerated and in prison." The court went on to note that Brown is "kind of desperate looking—trying to change or have his testimony a certain way in order to meet the ends that he's seeking. So … I don't find him credible on a number of things."

¶24 We also conclude that the circuit court's finding that Brown was not misinformed as to his SAP eligibility is supported by the record. The court acknowledged that Brown's trial counsel could not recall whether he had discussed SAP with Brown; however, the court found that counsel "knows what the standard is" for SAP eligibility. This finding is supported by counsel's testimony—which the court explicitly found "credible"—that he was an experienced criminal attorney, he had "run into this issue … several years" earlier and had "researched [SAP] before," and he "kn[ew] that a [WIS. STAT. ch.] 940 offense disqualifies somebody for the [SAP]."

¶25 Given the circuit court's finding that counsel knew the SAP eligibility standard, it reasonably concluded that Brown's trial counsel would not have provided Brown with "wrong information"; therefore, the court reasoned that "at best, [its] finding of fact is [that counsel] gave no information" about SAP eligibility. This finding is also supported by counsel's testimony. According to trial counsel, SAP was not something he "necessarily … would always discuss [with a defendant] prior to sentencing or prior to a plea" where prison was not a "certainty." Counsel specifically stated that he believed that "there was a very strong probability that [Brown] would not be receiving prison," so "it's possible [they] wouldn't have necessarily discussed" SAP eligibility and there were no notes in Brown's file indicating that they did.

11

¶26  In summary, regardless of whether Brown's SAP eligibility was or was not discussed prior to sentencing, Brown has failed to meet his burden to prove that his trial counsel misinformed him. In other words, under no circumstances does the *credible* evidence presented to the circuit court demonstrate that Brown was misinformed by his trial counsel as to his eligibility for SAP. The court found Brown's self-serving testimony incredible, and his trial counsel's inability to recall a discussion on the topic does not somehow bolster Brown's testimony or render it credible. Whether or not SAP was in fact discussed, the court's finding that Brown's trial counsel did not provide incorrect information regarding Brown's eligibility is not clearly erroneous, and, accordingly, counsel did not perform deficiently.

¶27  On the second and third issues—trial counsel's alleged failure both to advise Brown that he was ineligible for SAP on Count 3 and to inform Brown that he could have withdrawn his pleas prior to being sentenced—we conclude that Brown's ineffective assistance claims fail because he has not established that he was prejudiced by his trial counsel's allegedly deficient performance. *See Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995) (we may affirm on different grounds than those relied on by the circuit court). As the State asserts, "Regardless of how Brown attempts to characterize his argument, he is seeking to withdraw his pleas based on ineffective assistance of counsel through a postconviction motion." Meaning, as noted above, that Brown must show that he "would have insisted on going to trial," *see Burton*, 349 Wis. 2d 1, ¶50, with support from "objective factual assertions," *see Hampton*, 274 Wis. 2d 379, ¶60 (citation omitted).

¶28  Brown has failed to sufficiently plead or establish that he was prejudiced by his trial counsel's allegedly deficient performance. In his

postconviction motion, Brown claims that his "[t]rial counsel's representations were prejudicial" and that "[h]ad Brown known he was not eligible for earned release via the SAP, he would not have entered his pleas." On appeal, Brown claims he was "prejudiced because he did not have an opportunity to withdraw his pleas under the 'fair and just' standard and now seeks an opportunity to do so" and because "[c]ounsel's misadvice … effectively deprived Brown of his right to decide whether to go to trial or plead with full knowledge of the stakes involved."

¶29     What Brown entirely fails to argue is that he would not have pled no contest to Counts 1 and 3 and would have instead insisted on going to trial on all the charges against him. Any claim to the contrary is belied by Brown's express statement that he is not "asking that his pleas be withdrawn." Instead, he explains, "the proper remedy is to restore the case to a post-plea, pre-sentencing posture, so Brown can bring a pre-sentence motion for plea withdraw" under the "fair and just reason" standard. Thus, Brown is clearly not arguing that he would have gone to trial. As the State argues, "Brown is merely hopeful that he can secure a better plea deal."

¶30     Brown has also failed to provide objective factual assertions or allege special circumstances in support of any claim that he would have gone to trial but for his trial counsel's deficient performance. *See Hampton*, 274 Wis. 2d 379, ¶60; *Hill*, 474 U.S. at 60. Brown suggests that SAP eligibility was an important consideration in his decision to enter his pleas. During his testimony, however, he admitted that he did not even ask his trial counsel about SAP until after the plea hearing, despite testifying that he was aware of SAP prior to that time based on conversations with a friend. Further, as noted above, the PSI expressly stated that Brown was not eligible for SAP, but Brown did not express any concerns about his ineligibility after he reviewed the PSI with his trial counsel

prior to sentencing. Brown also failed to raise any concerns at his sentencing hearing when the parties were discussing SAP eligibility and reordering his sentences for that purpose.

¶31 Finally, the circumstances of this case do not support a conclusion that Brown would likely have insisted on going to trial but for trial counsel's alleged errors. Brown was charged with a total of six crimes (four of which were statutorily precluded from SAP), and he pled to only two. Additionally, the evidence against Brown was strong—a .210 BAC and Brown's own admissions, for example—and involved significant injuries to a family of four, including children. Thus, the factual circumstances do not support a conclusion that Brown would likely have insisted on going to trial. As such, Brown cannot show that he was prejudiced by his trial counsel's allegedly deficient performance, and Brown has not established that he is entitled to withdraw his pleas based on a manifest injustice.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.